# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Santiago v. E.W. Bliss Co.*, 2012 IL 111792

---

| | |
|---|---|
| Caption in Supreme Court: | ROGASCIANO SANTIAGO, Appellant, v. E.W. BLISS COMPANY *et al.*, Appellees. |
| | |
| Docket No. | 111792 |
| | |
| Filed | August 9, 2012 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a timely tort complaint identifying plaintiff by the name for which he was generally known was met with a request for a prejudicial dismissal as a sanction for use of a fictitious name without leave of court, a certified question was answered by articulating the standards for such a discretionary ruling and by holding that a subsequent amendment giving plaintiff's legal name related back for limitations purposes where it grew out of the same transaction. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Ronald S. Davis, Judge, presiding. |
| | |
| Judgment | Certified question answered.<br>Appellate court judgment reversed in part.<br>Circuit court order vacated.<br>Cause remanded with directions. |

| Counsel on Appeal | John R. Gorey and Tracy A. Robb, or Curcio Law Offices, of Chicago, for appellant. |
|---|---|
|  | Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, of Chicago (Brian P. Shaughnessy, Geoffrey M. Waguespack and Kimberly A. Ross, of counsel), for appellee Unique Machine Repair, Inc. |
| Justices | CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion.<br>Justice Karmeier specially concurred, with opinion.<br>Justice Burke specially concurred, with opinion, joined by Justice Freeman.<br>Justice Thomas dissented, with opinion, joined by Justice Garman.<br>Justice Theis took no part in the decision. |

**OPINION**

¶ 1        This appeal is from the appellate court's opinion on a certified question pursuant to Supreme Court Rule 308 (eff. Feb. 26, 2010), following the circuit court's interlocutory order denying defendants' motion to dismiss. The certified question focuses on two issues. The first issue is whether the circuit court "should" dismiss an injured[1] plaintiff's cause of action with prejudice as a sanction for intentionally[2] filing a complaint using a fictitious name without leave of the court pursuant to section 2-401(e) of the Code of Civil Procedure (735 ILCS 5/2-401(e) (West 2008)). The second issue is whether the circuit court "should" dismiss the injured plaintiff's cause of action with prejudice because the plaintiff's amended complaint, with the plaintiff's correct name, does not relate back to the initial filing.

¶ 2        The appellate court answered the first part of the certified question in the affirmative, with qualifications, and the second part in the affirmative. Specifically, the appellate court held: (1) the circuit court has discretion to dismiss the plaintiff's cause of action with prejudice as a sanction, and (2) the circuit court must dismiss the plaintiff's cause of action with prejudice "because the original complaint is a nullity, the limitations period has expired, and the amended complaint cannot relate back to the initial filing." 406 Ill. App. 3d 449, 466.

¶ 3        We answer the first part of the certified question and hold that the circuit court has discretion, as a matter of law, to dismiss a complaint with prejudice when brought by a

_____

[1]The certified question specifically refers to an "injured" plaintiff.

[2]The certified question specifically states "intentionally."

plaintiff using a fictitious name without leave of the court and that dismissal is neither mandatory nor precluded under those circumstances. However, dismissal is justified only when (1) there is a clear record of willful conduct showing deliberate and continuing disregard for the court's authority; and (2) a finding that lesser sanctions are inadequate to remedy both the harm to the judiciary and the prejudice to the opposing party. We answer the second part of the certified question in the negative and hold that when an injured plaintiff files a complaint using a fictitious name, without court approval, the original complaint is not a nullity, *per se*, and an amended complaint correcting the plaintiff's name may relate back to the initial filing pursuant to section 2-616(b) of the Code (735 ILCS 5/2-616(b) (West 2008)). Accordingly, the appellate court judgment is reversed in part and the cause is remanded to the circuit court of Cook County for further proceedings.

¶ 4                                              I. BACKGROUND

¶ 5        On May 12, 2006, plaintiff suffered severe injuries while operating a punch press for his employer, Assembled Products. On May 9, 2008, plaintiff filed a product liability complaint against the original defendants in the circuit court of Cook County. The complaint identified plaintiff as "Juan Ortiz," the name he was known by at his employment. Plaintiff was allowed to file a first amended complaint on November 12, 2008, naming additional defendants identified during discovery. The first amended complaint identified the plaintiff as "Juan Ortiz." Plaintiff also identified himself as "Juan Ortiz" in written discovery documents.

¶ 6        Defendants deposed plaintiff on May 19, 2009. When defendants asked plaintiff to state his full name, plaintiff responded that his birth name was "Rogasciano Santiago," but that he had also used the name "Juan Ortiz."

¶ 7        On May 26, 2009, and again on June 2, 2009, plaintiff sought leave of the court to file a second amended complaint to add the name "Rogasciano Santiago" as plaintiff's birth name. The circuit court allowed plaintiff to file his second amended complaint on September 18, 2009, over defendants' objections. The second amended complaint identified plaintiff as "Rogasciano Santiago, f/k/a Juan Ortiz." The circuit court also granted defendants leave to take an additional deposition of the plaintiff and conduct any additional discovery defendants deemed necessary.

¶ 8        Defendants moved to dismiss the plaintiff's cause of action. Defendants argued that plaintiff committed a fraud on the court and that the cause should be dismissed with prejudice as a sanction. Alternatively, defendants argued that plaintiff's original complaint was null and void as a matter of law because it was not filed in plaintiff's real name. Thus, according to defendants, the second amended complaint did not relate back and was barred by the statute of limitations.

¶ 9        The circuit court denied defendants' motion to dismiss. The circuit court certified the question to the appellate court, presenting two issues: (1) whether the circuit court should dismiss plaintiff's cause of action with prejudice as a sanction for filing a complaint using a fictitious name without leave of court pursuant to section 2-401 of the Code (735 ILCS 5/2-401 (West 2008)); and (2) whether the circuit court should dismiss the cause of action with

prejudice because the original complaint is a nullity, the limitations period has expired, and the amended complaint cannot relate back to the initial filing.

¶ 10　　The appellate court held that, "when an injured plaintiff intentionally files a complaint using a fictitious name, without leave of court to use the fictitious name pursuant to section 2-401 of the Code of Civil Procedure (735 ILCS 5/2-401 (West 2008)), the circuit court may, in its sound discretion, dismiss the complaint with prejudice as a sanction." 406 Ill. App. 3d at 463. The appellate court further held that, "when an injured plaintiff intentionally files a complaint using a fictitious name, without leave of court to use the fictitious name pursuant to section 2-401 of the Code of Civil Procedure (735 ILCS 5/2-401 (West 2008)), then subsequent to the expiration of the statute of limitations, files an amended complaint with the correct plaintiff's name, the circuit court must dismiss the cause with prejudice on the motion of a defendant because the original complaint is a nullity, the limitations period has expired, and the amended complaint cannot relate back to the initial filing." 406 Ill. App. 3d at 466. We allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 11　　　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　This appeal arose from a certified question pursuant to Supreme Court Rule 308 following the circuit court's interlocutory order denying defendants' motion to dismiss plaintiff's cause of action. Rule 308 authorizes the appellate court to allow appeal from an interlocutory order not otherwise appealable when an application for leave to appeal is filed and the trial court has found that: (1) the "order involves a question of law as to which there is substantial ground for difference of opinion" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Ill. S. Ct. R. 308 (eff. Feb. 26, 2010). "To qualify for an interlocutory appeal under Supreme Court Rule 308 [citation], a certified question must present an issue of law that is reviewable *de novo*." *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010).

¶ 13　　The circuit court certified the following question to the appellate court:

"When an injured plaintiff intentionally files a complaint using a fictitious name, without leave of court to use the fictitious name pursuant to 735 ILCS 5/2-401, then subsequent to the expiration of the statute of limitations, files an amended complaint with the plaintiff's correct name, should the court dismiss the cause with prejudice on the motion of a defendant as a sanction or because the limitations period has expired and the amended complaint does not relate back to the initial filing?"

¶ 14　　　　　　　　　　　　　　　A. Sanctions

¶ 15　　The first issue expressly presented in this certified question is whether a circuit court should dismiss a plaintiff's cause of action with prejudice as a sanction when a plaintiff intentionally filed a complaint using a fictitious name without court approval pursuant to section 2-401 of the Code of Civil Procedure (735 ILCS 5/2-401 (West 2008)). Initially, we must comment that the certified question is inartfully crafted. The question could be read as raising any of the following issues: (1) whether the trial court may dismiss with prejudice as

a sanction for filing a complaint using a fictitious name without court approval; (2) whether dismissal with prejudice is mandatory; or (3) whether the trial court is precluded from such a sanction. At the heart of each of these questions is the existence and scope of the court's authority to dismiss a complaint with prejudice as a sanction.

¶ 16 We find *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48 (1995), instructive on this issue. In *Sander*, this court acknowledged that a trial court may, in appropriate situations, dismiss a complaint with prejudice. That power derives from both Supreme Court Rule 219(c) (Ill. S. Ct. R. 219(c) (eff. July 1, 2002)) and from the trial court's inherent authority to control its docket. *Sander*, 166 Ill. 2d at 65. In *Sander*, we deemed the recognition of the court's inherent authority to be "necessary" to "prevent undue delays in the disposition of cases caused by abuses of procedural rules, and also to empower courts to control their dockets." *Sander*, 166 Ill. 2d at 66. We further acknowledged a court's power to dismiss a complaint with prejudice "where the record shows deliberate and continuing disregard for the court's authority." *Sander*, 166 Ill. 2d at 67. While the trial court's power to dismiss a complaint as a sanction was recognized in *Sander*, this court also warned that dismissal of a cause of action is a "drastic" sanction that "should only be employed where it appears that all other enforcement efforts of the court have failed to advance the litigation." *Sander*, 166 Ill. 2d at 67-68.

¶ 17 While *Sander* does not address the precise question raised by the certified question in this case, the same principles relied upon in *Sander* were applied by the court in *Zocaras v. Castro*, 465 F.3d 479 (11th Cir. 2006). We find *Zocaras*, 465 F.3d 479, particularly persuasive. In *Zocaras*, the United States Court of Appeals for the Eleventh Circuit articulated a two-part analysis for determining when an action may be dismissed as a sanction. The court held that, first, there must be a "clear record of willful conduct" on the part of the dismissed party. *Zocaras*, 465 F.3d at 483. Second, there must also be a finding that lesser sanctions are inadequate. *Zocaras*, 465 F.3d at 483. Both of these notions are consistent with this court's pronouncements in *Sander*.

¶ 18 In *Zocaras*, the Eleventh Circuit, in determining whether there was a clear record of willful conduct on the part of the dismissed plaintiff, relied heavily on the findings of fact made by the district court judge once the plaintiff's use of a false name came to light. At the district court hearing, the plaintiff, who had used several different aliases, answered some questions regarding the use of his real name and then asserted his fifth amendment right as to additional questions. Based on testimony from the hearing, the district court found that the plaintiff's conduct was deliberate and willful and was not a mistake. The court of appeals relied on these extensive findings, included in the appendix to its opinion, and found no error on the part of the district judge in dismissing the plaintiff's cause of action.

¶ 19 The court of appeals noted the second requirement that lesser sanctions are inadequate encompasses two distinct areas—harm to the judicial system and harm to the other party's interests. *Zocaras*, 465 F.3d at 484-85. The court of appeals agreed with the district court's findings that both the judicial system and the opposing party were harmed by the plaintiff's willful conduct.

¶ 20 *Zocaras* is consistent with the views expressed by this court in *Sander*. We therefore

answer the certified question as follows. The circuit court has discretion, as a matter of law, to dismiss a complaint with prejudice when brought by a plaintiff using a fictitious name without leave of the court. Dismissal is neither mandatory nor precluded under those circumstances. Dismissal is justified only when (1) there is a clear record of willful conduct showing deliberate and continuing disregard for the court's authority; and (2) a finding that lesser sanctions are inadequate to remedy both the harm to the judiciary and the prejudice to the opposing party.

¶ 21　　Here, the circuit court denied defendants' motion to dismiss and we are without the benefit of the court's rationale. Accordingly, we vacate the circuit court's order denying defendants' motion to dismiss and remand the cause to the circuit court with directions to conduct a new hearing to determine whether dismissal of plaintiff's cause of action as a sanction is appropriate under the substantive standards articulated in this opinion.

¶ 22　　　　　　　　　　　　B. Relation-Back Doctrine

¶ 23　　The second part of the certified question is whether the circuit court should dismiss the injured plaintiff's cause of action with prejudice because the plaintiff's amended complaint, with the plaintiff's correct name, does not relate back to the initial filing. Amendments to pleadings are governed by section 2-616 of the Code (735 ILCS 5/2-616 (West 2010)). Section 2-616(a) provides, in relevant part:

> "*At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff* or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, *and in any matter, either of form or substance*, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." (Emphases added.) 735 ILCS 5/2-616(a) (West 2010).

¶ 24　　Section 2-616(b), in turn, provides for relation back of the amended pleading to the original pleading, as follows:

> "The cause of action *** set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that *the cause of action asserted *** in the amended pleading grew out of the same transaction or occurrence set up in the original pleading*, even though the original pleading was defective in that it failed to allege *** the existence of some fact *** an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." (Emphasis added.) 735 ILCS 5/2-616(b) (West 2010).

¶ 25　　The purpose of the relation-back provision of section 2-616(b) is to preserve causes of action against loss due to technical pleading rules. *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 102 (1995). In construing the relation-back provision of

section 2-616(b), this court has stated that the requirements of section should be liberally construed "to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance. [Citation.]" *Boatmen's National Bank*, 167 Ill. 2d at 102.

¶ 26 The only requirements imposed by section 2-616(b) for the relation-back provision to be applicable are (1) that the original complaint was timely filed, and (2) that the cause of action asserted in the amended complaint grew out of the same transaction or occurrence. 735 ILCS 5/2-616(b) (West 2010). For purposes of the certified question, there is no dispute, and it is assumed that the original complaint was timely filed and that the cause of action alleged in the amended complaint grew out of the same transaction or occurrence. Thus, nothing in section 2-616(b) would support a determination that a complaint filed using a fictitious name is a nullity, or that a subsequently filed complaint amending the name of a plaintiff would not relate back to the date of the filing of the original complaint. The factual reasons for the plaintiff using a fictitious name are irrelevant to our inquiry on the legal question certified by the trial court on the relation back of the amended complaint.

¶ 27 The appellate court determined that the original complaint was null and void because the plaintiff filed the original complaint using a fictitious name. The appellate court relied on *Alton Evening Telegraph v. Doak*, 11 Ill. App. 3d 381 (1973), to support its assertion that "[i]t is well-settled that '[a] suit brought in a name which is not that of a natural person, a corporation or of a partnership is a mere nullity; and, in such a case *** the whole action fails." The appellate court concluded that a fictitious name is not that of a natural person. In making its determination, the appellate court relied upon a one-paragraph analysis contained in *Alton Evening Telegraph* without looking to the context of the opinion. In *Alton Evening Telegraph*, there were no facts before the court that identified the newspaper as an entity capable of suing. The question of whether a fictitious name may be used for a natural person was not before that court. Nonetheless, the appellate court concluded, based on *Alton Evening Telegraph*, that a fictitious name is not the legal name of a natural person and, therefore, any action commenced in a fictitious name is null and void. 406 Ill. App. 3d at 464. Simply stated, the holding in *Alton* is wholly inapplicable to this case.

¶ 28 To the contrary, this court has recognized that a person may be named in legal proceedings by his or her generally known name. See *People v. Montgomery*, 271 Ill. 580 (1916) (witness named in charging instrument as "Pearl Williams" but testified at trial as "Clara Williams"; evidence showed that witness was generally known by the name "Pearl"). See also *Lucas v. Farrington*, 21 Ill. 31 (1858).

¶ 29 Based on the plain language of section 2-616(b), we cannot say that a cause of action is *per se* null and void if a person files a complaint using a name other than his or her "legal" name. Thus, the appellate court erroneously determined that a complaint becomes a nullity solely for the reason that a plaintiff filed the complaint using a fictitious name without court approval.

¶ 30 Accordingly, we reverse that part of the appellate court decision holding that the circuit court must dismiss the plaintiff's cause with prejudice under the relation-back doctrine.

¶ 31                              III. CONCLUSION

¶ 32        For the foregoing reasons, we reverse in part the judgment of the appellate court; we vacate the circuit court order; and we remand the cause to the circuit court with directions to conduct a new hearing to determine whether dismissal of plaintiff's cause of action as a sanction is appropriate under the substantive standards articulated in this opinion.


¶ 33        Certified question answered.

¶ 34        Appellate court judgment reversed in part.

¶ 35        Circuit court order vacated.

¶ 36        Cause remanded with directions.


¶ 37        JUSTICE KARMEIER, specially concurring:

¶ 38        I concur in the majority's opinion. I write separately to address a number of problems with the dissent which neither the opinion nor Justice Burke's special concurrence discusses.

¶ 39        To begin with, the dissent treats the concepts of fictitious person or party and fictitious name as if they are one and the same. They are not. *Bogseth v. Emanuel*, 166 Ill. 2d 507 (1995), the central case in the dissent's analysis, is an example of a case involving a fictitious person or party. The "John Doe" named there as a respondent in discovery under section 2-402 of the Code of Civil Procedure (735 ILCS 5/2-402 (West 1992)) was not a living, breathing person. Plaintiffs merely used "John Doe" as a placeholder to represent someone they thought *might* exist and who might be proven culpable. He was a complete legal fiction.

¶ 40        There are good and obvious policy reasons for barring litigation by or against persons or entities who are fictional and do not actually exist. And it is understandable that courts have been especially sensitive about this issue when dealing with corporate entities, which are purely creations of the law and have no authority to act except as the law permits. See, *e.g.*, *Alton Evening Telegraph v. Doak*, 11 Ill. App. 3d 381 (1973); *Marsh v. Astoria Lodge No. 112, Independent Order of Odd Fellows*, 27 Ill. 420 (1862). But those concerns have no relevance here. Juan Ortiz, as the plaintiff in this case was initially designated, was not and is not a legally nonexistent party. He is very much an actual person, and no one disputes that the individual known as Juan Ortiz was, in fact, employed by Assembled Products and, while so employed, was injured while operating a punch press. It is only his name that was not real.

¶ 41        As with *Bogseth*, the various authorities invoked at paragraph 71 of the dissent are all clearly distinguishable from the case before us here. *Ohio Millers Mutual Insurance Co. v. Inter-Insurance Exchange of Illinois Automobile Club*, 367 Ill. 44, 54 (1937), on which *Bogseth* relied, involved a situation similar to the one in *Bogseth*: a defendant entity which had no legal existence. Because the summonses were served on that entity, an insurance exchange, and not the individual members of the exchange, this court held that the default judgments subsequently entered in favor of the plaintiffs and against the individual members of the exchange could not stand. *Ohio Millers Mutual Insurance Co.* did not present a situation, as this one does, where a natural person was identified by the wrong name.

¶ 42        The problem in *Goodkind v. Bartlett*, 153 Ill. 419 (1894), which is the source of the quote

from *Ohio Millers* used by the dissent at paragraph 73, was also different from the one before us here. The fatal defect in that case was that one of the defendants was not identified by name at all, but was merely described as the person married to another of the defendants. The court held that absent a statute permitting it, "persons, natural or artificial, cannot be made parties litigant by mere *descriptio persona*, but must be designated by name, both in the process and in the judgment." *Goodkind*, 153 Ill. at 423. Significantly, the court then went on to distinguish the situation where the party has been identified by the wrong name, holding that "in case of misnomer, if the summons is served on the party intended, and he fails to appear, or, appearing, fails to object, the judgment against him will be binding." *Id.*

¶ 43    *Theodorakakis v. Kogut*, 194 Ill. App. 3d 586 (1990), a third case cited by the dissent, involved the validity of a default judgment entered against a bank trust account, not a natural person. The trust account was properly identified in the pleadings. The problem was that the summons was directed to a different trust account which did not exist. As a result of the error, the correct party was never served. Relying on the principles that "[a] suit brought against a legally nonexistent party is void *ab initio*, and the summons served upon the nonexistent party does not give the court jurisdiction," the court concluded that the judgment in the case was properly vacated. *Theodorakakis*, 194 Ill. App. 3d at 589. Again, that is not the situation before us here. We do not have a nonexistent party. We have a party identified by the wrong name. Moreover, there is no issue as to service of process.

¶ 44    *Jenkins v. National R.R. Passenger Corp.*, No. 07 C 3427, 2008 U.S. Dist. LEXIS 840 (N.D. Ill. Jan. 3, 2008), another case cited by the dissent, likewise has no bearing on the legal questions presently before us. In *Jenkins*, the federal court to which the action had been removed considered whether certain counts of the plaintiff's complaint against Amtrak were barred by a two-year statute of limitations. Those counts were timely when the complaint was initially filed, but plaintiff took a voluntary dismissal. By the time she refiled her complaint, the limitations period and a one-year extension applicable to refiled actions had expired. While the counts were therefore untimely, plaintiff asserted that they should be deemed to relate back to a complaint in discovery which she had filed before the limitations period had run out. The federal court rejected that argument, reasoning the complaint in discovery was procedurally defective and could not qualify as a cause of action against Amtrak to which the refiled complaint could relate back within the meaning of the governing statute because it did not identify Amtrak or any other party as a defendant and did not assert any legal claims. *Jenkins*, 2008 U.S. Dist. LEXIS 840, **13-18. These issues have nothing to do with our case.

¶ 45    This takes us to *Smith v. Commissioners of Roads & Revenue*, 31 S.E.2d 648 (Ga. 1944), the last in the series of cases cited by the dissent in support of its characterization of Illinois law. At issue in *Smith* was whether the plaintiff, denominated as " 'Commissioners of Roads and Revenue of Glynn County, Georgia, the governing authority of Glynn County, a political subdivision of the State of Georgia,' " was "such an entity as can maintain a suit in court." *Smith v. Commissioners of Roads & Revenue*, 31 S.E.2d at 649. The Supreme Court of Georgia answered that question in the negative. It held that the plaintiff was not a legal entity under Georgia law and therefore could not institute legal proceedings. Accordingly, the action was a nullity and the demurrer sought by the defendant should have been sustained. *Smith v. Commissioners of Roads & Revenue*, 31 S.E.2d at 649-51.

¶ 46    Again, that is far removed from the situation before us here. The plaintiff in our case is a natural person, and the capacity of natural persons to initiate litigation is unquestioned. Our problem is simply what happens when such a person initiates litigation under an assumed name. I note, moreover, that after *Smith v. Commissioners of Roads & Revenue* was decided, a new civil practice act was adopted in Georgia. Applying the new law, the Georgia Supreme Court held that the misnomer of a party in the pleadings is a defect which may be waived if the misnamed party is in fact the legally cognizable proper party in interest. That is so even where the party named in a complaint is not a legal entity. The proceeding is not a nullity. If the party plaintiff named in a complaint is reasonably recognizable as a misnomer for a legal entity which is the real party plaintiff, the misnomer may be corrected by amendment. *Block v. Voyager Life Insurance Co.*, 303 S.E.2d 742, 744 (Ga. 1983). It is *Block* rather than the superceded decision in *Smith v. Commissioners of Roads & Revenue* that more closely resembles the law in Illinois.

¶ 47    There is no question that a party's use of a pseudonym can be problematic for the courts and for opposing parties. When a party is a natural person who actually exists, however, the mere fact that he or she is suing or being sued under something other than his or her given name is not an absolute bar to invocation of the jurisdiction of an Illinois court. To the contrary, section 2-401(b) of the Code of Civil Procedure (735 ILCS 5/2-401(b) (West 2010)) expressly provides that misnomer of a party is not a ground for dismissal and section 2-401(e) (735 ILCS 5/2-401(e) (West 2010)) specifically authorizes parties to appear under fictitious names upon application and for good cause.

¶ 48    The dissent takes issue with Justice Burke's reliance on section 2-401 on the grounds that section 2-401 is in derogation of the common law and should therefore be confined to its literal terms or what those terms imply. The common law which the dissent has in mind, however, is the body of law dealing with fictitious *parties*. Section 2-401 cannot be considered in derogation of that law because the statute does not deal with fictitious parties. Its concern is misnomers and fictitious *names*. As I have indicated, these are separate and distinct concepts.

¶ 49    In any case, I believe that the situation before us does fall within the literal terms of section 2-401, specifically, the misnomer provisions of section 2-401(b) (735 ILCS 5/2-401 (West 2010)). Although the appellate court in this case understood misnomer to refer to a situation where a party was designated by the wrong name as a result of an error (406 Ill. App. 3d at 464), the term misnomer "is not a euphemism for the word 'mistake.' " *Yedor v. Centre Properties, Inc.*, 173 Ill. App. 3d 132, 137 (1988). It actually "means nothing more than that a party is styled in other than his or her own name. (59 Am. Jur. 2d *Parties* § 243 (1987).)" *Bristow v. Westmore Builders, Inc.*, 266 Ill. App. 3d 257, 260 (1994); see Webster's Third New International Dictionary 1444 (1976) ("the misnaming of a person in a legal instrument or proceeding *** a use of a wrong name[;] an incorrect designation or term"). That describes the situation before us here. Plaintiff's use of an assumed name therefore qualifies as a misnomer. As such, it may be corrected at any time pursuant to section 2-401(b) and is not, standing alone, the basis for dismissal. *Hoagland v. Brown*, 71 Ill. App. 2d 240, 243 (1966); *Sjostrom v. McMurray*, 47 Ill. App. 3d 1040, 1043 (1977) (applying statutory predecessor to section 2-401).

-10-

¶ 50   Litigants may seek to proceed under a pseudonym for a variety of reasons, some innocent, some not. The appellate court in this case correctly recognized that whether and to what extent a litigant should be penalized for seeking recovery under an assumed name requires consideration of a range of factors. 406 Ill. App. 3d at 460-63. Among those factors are some similar to the ones applicable to situations involving equitable estoppel. For equitable estoppel to apply, it is not enough to show that there has been some misrepresentation by the opposing party. The doctrine will not act as a bar unless the party seeking to raise it can show that the misrepresentation was material to the dispute at hand and operated to that party's detriment. See, *e.g.*, *Vaughn v. Speaker*, 126 Ill. 2d 150, 162 (1988).

¶ 51   At this point, we do not have sufficient information before us to determine whether that threshold has been cleared here. While using a false name for the purpose of defrauding an opponent or subverting the judicial process for one's own benefit is plainly improper and cannot be tolerated, we simply do not yet know whether Santiago's decision to sue using the same name by which he was known at the workplace where he was injured was motivated by such purposes, adversely affected the fairness of these proceedings, or actually prejudiced defendant in any way. Until those issues are properly addressed and resolved, as they will be on remand under today's opinion, plaintiff's cause of action should not be dismissed with prejudice. I therefore concur.

¶ 52   JUSTICE BURKE, specially concurring:

¶ 53   I agree with and join in the majority's answer to the first part of the certified question. I write separately to address the second part of the question.

¶ 54   The second part of the certified question asks:

> "When an injured plaintiff intentionally files a complaint using a fictitious name, without leave of court to use the fictitious name pursuant to 735 ILCS 5/2-401[e], then subsequent to the expiration of the statute of limitations, files an amended complaint with the plaintiff's correct name, should the court dismiss the cause with prejudice on the motion of a defendant *** because the limitations period has expired and the amended complaint does not relate back to the initial filing?"

The appellate court answered this part of the question "yes." The appellate court stated:

> "We find that the relation-back doctrine does not apply in this situation because the original complaint was a nullity. It is well settled that '[a] suit brought in a name which is not that of a natural person, a corporation or of a partnership is a mere nullity; and, in such a case *** the whole action fails.' *Alton Evening Telegraph v. Doak*, 11 Ill. App. 3d 381, 382 (1973). In this case, there is no question that 'Juan Ortiz' is not the legal name of a natural person, and therefore any action commenced on behalf of Juan Ortiz is null and void." 406 Ill. App. 3d 449, 464.

Because there were no "legally valid pleadings to which his second amended complaint could relate back" (*id*. at 465), and because the limitations period had expired, the appellate court held that the second amended complaint had to be dismissed with prejudice. *Id*. at 466.

¶ 55   Before this court, defendants repeat the appellate court's reasoning and, in addition to

*Alton Evening Telegraph*, cite *Bogseth v. Emanuel*, 166 Ill. 2d 507 (1995), *Theodorakakis v. Kogut*, 194 Ill. App. 3d 586 (1990), and *Ohio Millers Mutual Insurance Co. v. Inter-Insurance Exchange of the Illinois Automobile Club*, 367 Ill. 44, 54 (1937), for the proposition that, at common law, a civil complaint filed by a real person under a fictitious name was a nullity. It is unclear, however, to what extent this was, in fact, the rule in Illinois. Although the cases cited by defendants do state that " 'a proceeding by or against a party by a mere fictitious name will be a nullity' " (*Bogseth*, 166 Ill. 2d at 514 (quoting *Ohio Millers Mutual Insurance Co.*, 367 Ill. at 54)), they are all distinguishable on their facts. The cases defendants cite address situations where a defendant did not exist at all (*Bogseth*, *Ohio Millers Mutual Insurance Co.*), where a corporation whose existence is defined by law was involved (*Alton Evening Telegraph*), or where a summons was served on a nonexistent trust account (*Theodorakis*). Defendants have not cited any Illinois case in which a court actually dismissed a complaint filed by a real person, using a fictitious name, on the ground that the complaint was deemed a nullity at common law.

¶ 56    In any event, both defendants' and the appellate court's exclusive focus on the common law is misplaced. Section 2-401(e) of the Code of Civil Procedure (735 ILCS 5/2-401(e) (West 2010)) expressly permits a party to appear under a fictitious name "[u]pon application and for good cause shown." Thus, to the extent that the common law in Illinois once categorically held that a complaint may not be filed by a real person under a fictitious name, that rule has been superceded by statute.

¶ 57    The certified question references section 2-401(e), not the common law, and states that plaintiff violated section 2-401(e) by not obtaining leave of court to proceed under a fictitious name at the time he filed his original complaint. The relevant question is therefore one of legislative intent. That is, did the legislature intend that a plaintiff's failure to comply with section 2-401(e) would automatically render the complaint *per se* null and void, precluding invocation of the circuit court's jurisdiction? The answer is "no."

¶ 58    Section 2-407 of the Code of Civil Procedure states that no action may be dismissed for failure to include a necessary party without first "affording reasonable opportunity" to add the necessary party. 735 ILCS 5/2-407 (West 2010). In addition, section 2-616 provides that at "any time before final judgment amendments may be allowed on just and reasonable terms *** in any matter, either of form or substance." 735 ILCS 5/2-616 (West 2010). Neither of these provisions excludes complaints filed pursuant to section 2-401(e). Thus, given the plain language of the Code of Civil Procedure, it cannot be the case that filing a complaint under a fictitious name, without simultaneously obtaining leave of court in violation of section 2-401(e), automatically, and in every instance, renders the complaint null and void.

¶ 59    Federal courts have reached the same conclusion interpreting similar provisions in federal law. For example, in *EW v. New York Blood Center*, 213 F.R.D. 108 (E.D.N.Y. 2003), the defendant contended that the plaintiff's use of a pseudonym in a complaint without first obtaining leave of court to do so meant that no action had properly been commenced, thereby depriving the court of any jurisdiction over the cause of action and rendering the matter void. The court, in response, looked to Federal Rule of Civil Procedure 17(a), which provides that no action may be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or

substitution of the real party in interest. The court stated:

> "In light of these provisions of the Federal Rules, [defendant's] contention that the Court lacks jurisdiction over the matter, and cannot permit amendment of the complaint to reflect the name of the real party in interest, is obviously wrong. Fed. R. Civ. P. 17(a) itself specifies that the court may permit correction of a caption in a matter under these circumstances, if a plaintiff has not been named or identified correctly. Thus, the federal rule itself indicates that failing to bring an action in the name of the real party in interest does *not* immediately and automatically divest a district court of jurisdiction." (Emphasis in original.) *Id*. at 109.

Other decisions have reached the same conclusion. See, *e.g.*, *Doe v. Barrow County*, 219 F.R.D. 189 (N.D. Ga. 2003); *A.G. v. American Credit Bureau, Inc.*, No. 3:11-CV-711, 2011 U.S. Dist. LEXIS 141573 (D. Conn. Dec. 8, 2011); *J.V. v. Seminole County School Board*, No. 6:04-cv-1889-Orl-28JGG, 2005 U.S. Dist. LEXIS 46473 (M.D. Fla. May 25, 2005); *Jaufman v. Levine*, No. 1:06-CV-1295, 2007 U.S. Dist. LEXIS 72883 (N.D. N.Y. Sept. 28, 2007); see also 2 James Wm. Moore, Moore's Federal Practice § 10.02(2)(c)(iv) (3d ed. 2005) ("the court does not lose jurisdiction merely because the plaintiff files under a fictitious name but fails to request leave to proceed anonymously at the same time the complaint is filed").

¶ 60    Further, the nullity rule adopted by the appellate court can lead to unjust results. For example, assume that a plaintiff files a complaint as "Jane Doe" on the last day of the statute of limitations period. She does so intentionally, having a legitimate privacy interest that outweighs the public's interest in open judicial proceedings. See *Doe v. Doe*, 282 Ill. App. 3d 1078 (1996) (discussing what constitutes "good cause" under section 2-401(e)). However, a motion seeking leave to file under a fictitious name is not filed until a day later, after the limitations period has run. Under the appellate court's nullity rule, which holds that any complaint intentionally filed "under a false name without leave of court" is null and void (406 Ill. App. 3d at 466), the plaintiff's cause of action would have to be dismissed. It is simply unreasonable to conclude that the General Assembly, having authorized the use of fictitious names in section 2-401(e), intended such a result. Thus, to the extent that there was once a common law rule which would have held that plaintiff's original complaint was a nullity, that rule has clearly been abrogated by the legislature.[3]

¶ 61    Plaintiff in the case at bar failed to seek leave of court to use a fictitious name at the time he filed his original complaint, thereby violating section 2-401(e). The violation of the statute is potentially sanctionable conduct, under the terms set forth by the majority in answer to the first part of the certified question. However, the legislature did not intend that a plaintiff's

---

[3] Plaintiff also contends that his use of a fictitious name was a misnomer under section 2-401(b) of the Code of Civil Procedure (735 ILCS 5/2-401(b) (West 2010)), and because that section prohibits dismissal solely for use of misnomer, his original complaint cannot be considered a nullity. I express no opinion on whether plaintiff's use of a fictitious name in this case qualified as a misnomer within the meaning of section 2-401(b). As discussed above, wholly apart from the question of misnomer, it is clear that the legislature did not intend that a plaintiff's failure to comply with section 2-401(e) would render the complaint a nullity.

failure to comply with section 2-401(e) would automatically, and in every instance, render the cause of action null and void. Accordingly, I join with the majority in holding that the circuit court was not required, as a matter of law, to dismiss plaintiff's second amended complaint because there was no pleading to which the amended complaint could relate back.

¶ 62    For the foregoing reasons, I specially concur.

¶ 63    JUSTICE FREEMAN joins in this special concurrence.

¶ 64    JUSTICE THOMAS, dissenting:

¶ 65    With respect to the second part of the certified question, I would find that plaintiff Santiago's second amended complaint does not relate back to the earlier filed original complaint because that earlier pleading was a mere nullity that was without legal effect to avoid running of the statute of limitations. The majority's contrary approach is both bad policy and at odds with settled Illinois precedent. Because I believe that resolution of the second part of the certified question requires dismissal of the case with prejudice, there is no need to reach the first part of the certified question.

¶ 66    The second part of the question certified for appellate review asks the following:

> "When an injured plaintiff intentionally files a complaint using a fictitious name, without leave of court to use a fictitious name pursuant to 735 ILCS 5/2-401, then subsequent to the expiration of the statute of limitations, files an amended complaint with the correct plaintiff's name, should the court dismiss the cause with prejudice on motion of a defendant *** because the limitations period has expired and the amended complaint does not relate back to the initial filing?"

¶ 67    At the outset, I believe that the majority must concede that in Illinois it is well settled that if an original complaint is considered a nullity, it would be void *ab initio*. See *Bogseth v. Emanuel*, 166 Ill. 2d 507, 513 (1995). When any document is considered void *ab initio*, it means that it must be treated "as if it never existed." See *In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 39 (contract was ruled void *ab initio* and must be treated as if it never existed); *Siakpere v. City of Chicago*, 374 Ill. App. 3d 1079, 1081-82 (2007) (a court lacks jurisdiction over a complaint that is null and void *ab initio* and any new complaint filed outside of the limitations period would be time barred); *In re M.M.D.*, 344 Ill. App. 3d 345, 348 (2003) (the legal effect of enacting an unconstitutional statute is that it is void *ab initio*, as if it never existed from its inception); *People v. Pozdoll*, 230 Ill. App. 3d 887, 893-94 (1992) (statute found void and as if it never existed); see also Black's Law Dictionary 1172, 1709 (9th ed. 2009) (stating that "null" means "[h]aving no legal effect" and "*void ab initio*" means "[n]ull from the beginning"). Thus, if the original complaint in this case—filed three days before the statute of limitations expired—never existed, then it logically follows that there would be nothing for the subsequent complaint—filed more than a year after the statute of limitations expired—to relate back to.

¶ 68    To answer the certified question, however, the lead opinion of Chief Justice Kilbride considers it sufficient to simply note that the only requirements of section 2-616(b) of the

Code of Civil Procedure for triggering application of the relation-back doctrine are (1) that the original complaint was timely filed, and (2) that the cause of action asserted in the amended complaint grew out of the same transaction or occurrence. *Supra* ¶ 26 (citing 735 ILCS 5/2-616(b) (West 2010)). In a classic case of question begging, the Chief Justice then says that "nothing in section 2-616(b) would support a determination that a complaint filed using a fictitious name is a nullity." *Supra* ¶ 26. But whether section 2-616(b) says anything about fictitious names or null complaints is completely beside the point. If the original complaint was a nullity nonetheless, then section 2-616(b)'s silence about what constitutes a null complaint could not possibly make any difference. There would still be nothing for the subsequent complaint to relate back to if the original complaint is deemed to have never existed. The lead opinion does not explain how it could be otherwise.

¶ 69 The lead opinion instead looks exclusively to section 2-616(b) to determine whether the complaint filed on May 9, 2008, on behalf of "Juan Ortiz" was a nullity, but the question is clearly not governed by that statute. Rather, the question of whether a complaint filed under a fictitious name is a nullity is governed by common law principles. This is because any statute that would allow a suit by or on behalf of a fictitious person without leave of court would be in derogation of the common law, and those statutes which authorize filing such suits must do so explicitly. *Bogseth*, 166 Ill. 2d at 514. The lead opinion does not claim that there is anything explicit in section 2-616(b) (or any other statute) that allows the intentional filing of a complaint under a fictitious name without leave of court. Thus, because the common law prohibits suits filed under a fictitious name without leave of court and considers them to be a nullity, and because section 2-616(b) does not provide "a clear affirmative indication that such suits are permissible," this court cannot properly conclude that section 2-616(b) permits suits to be brought under the name of a fictitious person. See *Bogseth*, 166 Ill. 2d at 514.

¶ 70 The appellate court appropriately looked to the common law to resolve the issue. It cited *Alton Evening Telegraph v. Doak*, 11 Ill. App. 3d 381, 382 (1973), for the axiomatic principle that a "suit brought in a name which is not that of a natural person *** is a mere nullity; and in such a case *** the whole action fails." The lead opinion protests that this statement from *Alton* is not applicable to the present case because here the appellate court did not look to the "context of the opinion" in *Alton*. See *supra* ¶ 27. In *Alton*, the attorney for the plaintiff brought suit in the name of "Alton Evening Telegraph," which was not an entity capable of suing. *Alton* essentially found that the suit was a nullity and it was too late after judgment to bring suit under the name of the correct legal entity—*Alton Evening Telegraph, Inc.*—even where that correct entity's name appeared in an exhibit attached to the complaint. *Alton*, 11 Ill. App. 3d at 382.

¶ 71 The lead opinion finds *Alton* "wholly inapplicable" because it did not purport to hold that any action commenced in a fictitious name without leave of court is null and void. See *supra* ¶ 27. What the lead opinion fails to recognize, however, is that the point it cannot find in *Alton* is indeed settled Illinois law. Illinois courts have historically and uniformly held that "a proceeding *by or against* a party by a mere fictitious name will be a nullity." (Emphasis added.) (Internal quotation marks omitted.) *Bogseth*, 166 Ill. 2d at 514; *Ohio Millers Mutual Insurance Co. v. Inter-Insurance Exchange of the Illinois Automobile Club*, 367 Ill. 44, 54

(1937); *Goodkind v. Bartlett*, 153 Ill. 419, 423 (1984); *Theodorakakis v. Kogut*, 194 Ill. App. 3d 586, 589 (1990); see also *Jenkins v. National R.R. Passenger Corp.*, No. 07-C-3427, 2008 WL 68685 (N.D. Ill. 2008) (applying Illinois law, the federal court held that (1) suits brought against fictitious parties are void *ab initio*, (2) such suits deprive the court of subject matter jurisdiction, and (3) the claims involved are not shielded from the statute of limitations bar); see also *Smith v. Commissioners of Roads & Revenue*, 31 S.E.2d 648 (Ga. 1944) (because the original action by the fictitious party is a nullity, there is no cause of action pending before the court and an amendment adding the name of a real or existing party will not be permitted).

¶ 72     I find this court's decision in *Bogseth* to be particularly helpful. There, the plaintiffs filed a complaint for discovery, naming as the sole defendant a fictitious "John Doe" in addition to named respondents in discovery. The plaintiffs later converted the respondents in discovery to defendants. The converted defendants subsequently filed a motion to dismiss, insisting that the court did not have subject matter jurisdiction over the case, and that section 2-402 of the Code (735 ILCS 5/2-402 (West 1992)), which allows a plaintiff to designate respondents in discovery "other than the named defendants," did not prevent the original complaint from being a nullity. This court agreed with the defendants. *Bogseth*, 166 Ill. 2d at 513-14.

¶ 73     Specifically, *Bogseth* held that suits brought against fictitious parties are void *ab initio*. *Bogseth*, 166 Ill. 2d at 513-14. This court cited with approval the settled holding of *Ohio Millers* that " 'a proceeding *by or against* a party by a mere fictitious name will be a nullity.' " (Emphasis added.) *Bogseth*, 166 Ill. 2d at 514 (quoting *Ohio Millers*, 367 Ill. at 54). The court further noted that the common law prohibits filing lawsuits against fictitious defendants, and any statute to the contrary would be in derogation of the common law and would have to be strictly construed against allowing such suits. *Bogseth*, 166 Ill. 2d at 514. This court concluded that because there was no affirmative indication in section 2-402 that such suits are permissible, it could not find that section 2-402 permits suits to be brought against fictitious persons. *Bogseth*, 166 Ill. 2d at 514.[4]

¶ 74     I would find *Bogseth* controlling. The special concurrence of Justice Burke suggests that the lead opinion should find *Bogseth* distinguishable, arguing that the common law rule that a complaint may not be filed under a fictitious name has been superceded by section 2-401(e) in this case. See *supra* ¶ 55 (Burke, J., specially concurring, joined by Freeman, J.). In partial derogation of the common law, section 2-401(e) provides that parties may appear under fictitious names "[u]pon application and for good cause shown." 735 ILCS 5/2-401(e) (West 2008). Section 2-401(e) is silent, however, as to what effect failure to seek leave of court to file under a fictitious name (and to show good cause) will have on plaintiff's cause of action.

¶ 75     The problem with Justice Burke's analysis is that it ignores the fundamental principle that "a court cannot construe a statute in derogation of the common law beyond what the words of the statute express[ ] or beyond what is necessarily implied from what is expressed." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69 (2004); see also *Heider v. Knautz*, 396

---

[4]*Bogseth* went on to hold that its decision should be given prospective application.

Ill. App. 3d 553, 561 (2009). In construing a statute in derogation of the common law, a court will not presume a modification that goes further than the modification that the statute specifies or clearly implies. *Adams*, 211 Ill. 2d at 69. Thus, Illinois courts have limited all manner of statutes in derogation of the common law to their express language, in order to effect the least—rather than the most—alteration in the common law. *Adams*, 211 Ill. 2d at 69 (collecting cases).

¶ 76    Thus, it is clear that section 2-401(e) must be interpreted to effect only a limited modification to the common law rule that complaints filed under a fictitious name are a nullity. What that means in this case is that section 2-401(e) limits the common law rule only to the extent that a complaint filed under a fictitious name is done "[u]pon application and for good cause shown." There is no question here that the complaint filed under the fictitious name of "Juan Ortiz" was done without application and without good cause shown—as the question certified for this court assumes that Santiago filed the complaint without leave of court under a fictitious name. Thus, the common law rule finding complaints brought by a fictitious party to be null and void is directly applicable to this case.

¶ 77    Justice Burke claims that federal courts have reached the same conclusion as her "in interpreting similar provisions in federal law." See *supra* ¶ 59 (Burke, J., specially concurring, joined by Freeman, J.). The federal cases cited by Justice Burke are easily distinguishable, however, as they exclusively involved discussions of the federal rules of civil procedure and did not address the validity of the Illinois common law rule or any similar state or federal common law rule. For example, in *EW v. New York Blood Center*, 213 F.R.D. 108, 109-10 (E.D.N.Y. 2003), and *Doe v. Barrow County*, 219 F.R.D. 189 (N.D. Ga. 2003), the defendants' jurisdictional arguments relied solely on Federal Rule 10(a), which generally requires every party to be named in the complaint. Nothing in Federal Rule 10(a) addressed when a court might lack jurisdiction or when a complaint might be rendered null. There is obviously a world of difference between a state common law rule that directly holds that complaints brought by or against fictitious parties are null, and Federal Rule 10(a), which simply provides that "the complaint must name all the parties." See Fed. R. Civ. P. 10(a). Given that none of the cases cited by the special concurrence addressed any argument that those courts lacked jurisdiction based on a common law rule deeming as null a complaint filed by or on behalf of a fictitious party, they are not helpful in resolving the question before us.

¶ 78    Additionally, Justice Burke's reference to sections 2-407 and 2-616 of our own state code is misplaced. Both statutory sections deal with nonjoinder of necessary parties. Neither section specifically or impliedly addresses the impact that filing a complaint solely under a fictitious name without leave of court has on the case. Nor does either section even impliedly alter the common law rule against the use of fictitious names, and thus nothing therein can be read to expressly abrogate the common law rule.

¶ 79    Moreover, it cannot seriously be maintained that the holding in *Bogseth* should be limited so as to apply only to complaints that are brought against fictitious *defendants*. There would be no principled reason for such a limitation.

¶ 80    With respect to Justice Karmeier's claim in his special concurrence that the common law

rule applies only to fictitious *parties* and not *fictitious* names, I note that the case law does not make any distinction between fictitious parties and fictitious names. Justice Karmeier appears to be the first to make this distinction. If anything, Justice Karmeier has it backwards. The black letter common law that I rely upon states very clearly that " 'a proceeding by or against a party by a mere fictitious *name* will be a nullity.' " (Emphasis added.) *Bogseth*, 166 Ill. 2d at 514 (quoting *Ohio Millers*, 367 Ill. at 54, citing *Marsh v. Astoria Lodge No. 112, Independent Order of Odd Fellows*, 27 Ill. 421 (1862)). The rule as stated presumes that there is an actual party, but also that that party is attempting to proceed under a fictitious name.

¶ 81    Thus, Justice Karmeier is incorrect in his belief that the common law rule is only applicable when persons or entities purported to be parties "do not actually exist." See *supra* ¶ 40 (Karmeier, J., specially concurring). To be sure, *Bogseth* also quite clearly states that "suits brought against fictitious parties are void." *Bogseth*, 166 Ill. 2d at 513. But that just happened to be the particular situation the court was addressing in *Bogseth*, as the plaintiff there named a fictitious "John Doe" as a respondent in discovery. Of upmost importance, however, is that nothing in *Bogseth* or *Ohio Millers* can be interpreted to limit the broader principle that a party cannot bring a suit by a mere fictitious name or sue a person or entity by a fictitious name without leave of court. " 'It requires, indeed, but the mention of it, to show that to allow legal proceedings against parties by mere descriptions *or fictitious names* would be simply absurd and grossly illogical.' " (Emphasis added.) *Ohio Millers*, 367 Ill. at 54 (quoting *Goodkind v. Bartlett*, 153 Ill. 419 (1894)).

¶ 82    Both *Marsh* and *Goodkind* are helpful in explaining why Justice Karmeier is making a distinction without a difference. *Marsh* involved a corporate plaintiff that did not have authority to sue, except under the exact style designated by the statute that made the incorporation. Thus, there was a "real" plaintiff in that case who was not allowed to proceed because of the common law doctrine that bars a plaintiff from proceeding under a fictitious name. See *Ohio Millers*, 367 Ill. at 54 (citing *Marsh* for the proposition that a proceeding by a party by a fictitious *name* will be a nullity). Similarly, in the present case, Santiago is an actual person, but he did not have the authority to sue under the fictitious name of Juan Ortiz, where that name cannot be considered a validly assumed alias.

¶ 83    In *Goodkind*, the plaintiff attempted to sue a real person or party when he attempted to name the wife of John N. Hummer, whose actual name happened to be Rachel B. Hummer. The plaintiff's summons named as defendants "John M. Hummer and ___ Hummer, his wife." Justice Karmeier is correct that *Goodkind* invoked the principle that "persons, natural or artificial, cannot be made parties litigant by mere *descriptio persona*, but must be designated by name." *Goodkind*, 153 Ill. at 423. But he fails to acknowledge that the court in its holding also invoked the principle that "a proceeding by or against a party by a mere fictitious *name* will be a nullity." (Emphasis added.) See *Goodkind*, 153 Ill. at 423; see also *Ohio Millers*, 367 Ill. at 54 (explaining the holding in *Goodkind*). Justice Karmeier is correct that the defect in *Goodkind* was that Rachel Hummer, as "one of the defendants was not identified by name at all." See *supra* ¶ 42 (Karmeier, J., specially concurring). But it is also just as clear that the result would have been the same had the plaintiff in that case attempted to name Rachel Hummer by using a fictitious name instead of not naming a person at all.

¶ 84    Nor are there "any good or obvious policy reasons" to distinguish between fictional names and fictional persons as Justice Karmeier suggests. See *supra* ¶ 40 (Karmeier, J., specially concurring). But there are, however, strong policy reasons to consider as void *ab initio* complaints that are brought by plaintiffs using fictitious or false names for themselves without leave of court. In contrast to *Bogseth* where the only problem with the complaint was that the plaintiffs could not name a nonfictitious defendant at the outset of litigation, an attorney bringing suit should always know the identity of his client before bringing suit. See *Alton*, 11 Ill. App. 3d at 382. Additionally, deliberately bringing suit under a false or fictitious name without leave of court constitutes a fraud upon the court in my opinion. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46 (1944), *overruled on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17 (1976). It "certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action." *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003). This is no doubt why it is such a rare occurrence in the case law for a litigant to deliberately file a complaint using a fictitious name without leave of court.

¶ 85    In *Dotson*, the Seventh Circuit Court of Appeals was confronted with just such a rare occurrence. There, a man whose real name was DeMarco Sheppard filed a civil rights suit under the false name of "Shaunte Dotson." During discovery proceedings, defendants learned of Sheppard's true identity. They also learned that he had created a different birthday for his Dotson persona. Despite the fact that Sheppard eventually disclosed his true identity and birth date, the Court of Appeals found that the "instant case represents precisely the situation where one party's conduct so violates the judicial process that imposition of a harsh penalty [of dismissal of the suit with prejudice] is appropriate not only to reprimand the offender, but also to deter future parties from trampling on the integrity of the court." *Dotson*, 321 F.3d at 668.

¶ 86    It is true that *Dotson* did not involve the Illinois common law rule deeming complaints brought under a fictitious name to be a nullity and void *ab initio*. Rather, the court rested its decision upon "the court's inherent authority to rectify abuses to the judicial process" and upon federal court rules that address sanctions for discovery violations. *Dotson*, 321 F.3d at 666-67. But *Dotson* supports my larger point that the Illinois common law rule deeming such complaints void *ab initio* is supported by strong policy reasons and that there is nothing remarkable about the end result of dismissal with prejudice in such cases.

¶ 87    The lead opinion of Chief Justice Kilbride seems to claim that "Juan Ortiz" was not a fictitious name when it goes down the road of citing the general proposition that a person can bring a legal proceeding in his "generally known name." See *supra* ¶ 28. The 800-pound-gorilla-in-the-room problem with the lead opinion's analysis is that the certified question did not ask us to rule on the assumption that the original complaint was brought in Santiago's "generally known name," but rather the question asked us to assume that he "intentionally file[d] a complaint using a fictitious name, without leave of court to use a fictitious name."

¶ 88    Santiago makes the same sort of faulty argument as the lead opinion; he argues that "Juan Ortiz" was a "validly assumed" alias, under which he was entitled to bring suit. This argument, of course, suffers from the same defect as the lead opinion's argument. It begins with an assumption that is completely contrary to the premise imposed by the certified

question, which asks us to assume that "Juan Ortiz" is a *fictitious* name, not a validly assumed alias.

¶ 89    But there are even graver problems with the lead opinion's and Santiago's analyses. Citing Black's Law Dictionary, Santiago concedes that there is a clear distinction between a fictitious name and a validly assumed alias. Santiago asserts that one can validly assume an alias, as long as the purpose is not to subvert justice or perpetrate a fraud. In contrast, Santiago acknowledges, a "fictitious name" is not given the same favorable treatment as a mere alias. See *Bogseth*, 166 Ill. 2d at 514. A fictitious name is defined as "[a] counterfeit, alias, feigned, or pretended name taken by a person, differing in some essential particular from his true name *** with the implication that it is *meant to deceive or mislead*." (Emphasis added.) Black's Law Dictionary 624 (6th ed. 1990).

¶ 90    I would find that the circuit court's choice of the word "fictitious" is well supported by the evidence in the record, including Santiago's own deposition testimony in this case given in May of 2009. The evidence showed that during the course of the litigation, Santiago filed his answers to three sets of interrogatories, which requested among other things, his name. Santiago answered "Juan Ortiz" and "Juan Jose Ortiz." The interrogatories also asked for his medical history, and Santiago only related information for "Juan Ortiz." He also failed to identify Rogasciano Santiago as his true name or even as another name that he had used. It was not until more than a year after the initial complaint was filed that he divulged his true name during his deposition testimony. That testimony showed that he entered the United States illegally in 1993 and came to Chicago. He worked at his first two jobs using his true name. He testified, however, that at some point, he began using the fictitious name of "Juan Ortiz" for a number of years "to have a job without using my name." Although Santiago's birth date is May 24, 1967, he used a false birth date of February 17, 1966, whenever he used the fictitious name of "Juan Ortiz" on job applications. Santiago further testified that he "fixed" his legal status by becoming a resident alien sometime before his deposition in this case. He also had obtained a state-issued identification card in the name of "Juan Ortiz," but has since thrown it out, and has been issued a new card under his true name.

¶ 91    I have no quarrel with the principle that one has a right to adopt an alias as long as it is validly assumed and its purpose is not to deceive, or as Santiago puts it, "as long as its purpose is not to subvert justice or perpetrate a fraud." But there is enough undisputed evidence in the record to determine that it was exactly his purpose in using the alias to subvert justice and perpetrate a fraud. At any rate, the certified question assumes that the name was a fictitious one, and we cannot assume differently. In other words, we are limited to considering the specific factual situation presented by the certified question, that is, to a situation where a plaintiff intentionally files a complaint under a fictitious name without leave of court.

¶ 92    Beginning on the right road, the lead opinion correctly states that "[t]he factual reasons for [Santiago] using a fictitious name are irrelevant to our inquiry on the legal question certified by the trial court." *Supra* ¶ 26. But then the lead opinion veers off over a guard rail and addresses a different legal question from the one certified by the trial court. Instead of addressing the question certified by the trial court of whether an amended complaint relates back to a complaint intentionally filed under a *fictitious name* without leave of court, the lead

-20-

opinion addresses the different question of whether an amended complaint relates back to a complaint filed under a *generally known name*. See *supra* ¶ 28.

¶ 93    As if that were not bad enough, the lead opinion then relies on completely inapposite case law to support its point. The end result is that it creates an odd new rule that allows litigants who file suits under wholly deceptive and fictitious names to be treated the same as a person who, for example, is named William Smith and innocently files suit as Bill Smith. The lead opinion cites *People v. Montgomery*, 271 Ill. 580 (1916), and *Lucas v. Farrington*, 21 Ill. 31 (1858), for the proposition that this court has recognized that a person may be named in legal proceedings by his or her generally known name. Neither case, however, has the least bit of application to the case before us.

¶ 94    *Montgomery* was a criminal case where the defendant was charged with the sale of cocaine hydrochloride without the written prescription of a registered physician. The information charged that the illegal sale was made to "Pearl Williams." At trial, the State called "Clara Williams" as a witness. She identified herself as C. Williams and testified that she purchased the bottle of cocaine from the defendant. Other witnesses were also called to testify, and in speaking of the first witness, always referred to her as "Pearl." The defendant argued before this court that the evidence was insufficient to sustain the guilty verdict under the circumstances. This court rejected that argument, remarking that the jury was justified in concluding from the evidence that the witness "Clara Williams" was generally known by the name of "Pearl Williams." *Montgomery*, 271 Ill. at 582.

¶ 95    It is readily apparent that *Montgomery* had absolutely nothing to do with whether a litigant may bring a suit in their generally known name. Rather, the question was whether the confusion over the identity of the witness created a reasonable doubt of the defendant's guilt.

¶ 96    *Farrington*, a case decided two years before the Pony Express galloped out on its first run, involved a plaintiff who brought suit in the name of "S. S. Farrington." The defendant complained that the plaintiff was called and known by the name of "Samuel S. Farrington." The plaintiff replied that he was "as well known by the name of S. S. Farrington as by the name of Samuel S. Farrington." The court rejected the defendant's "plea of misnomer" and found that the plaintiff could proceed under such circumstances "even if the Christian or given name is made up of initials only." *Farrington*, 21 Ill. at 32-33. *Farrington* was decided long before the law on misnomer or bringing suits under fictitious names was fully developed in Illinois.

¶ 97    The situation before us is immensely different from the situations in *Montgomery* and *Farrington* where someone sues or is complaining as a witness in a name that differs slightly from their legal name, but yet is a name they are commonly known by and is not for the purpose of promoting a false identity. Unlike the situations in those two cases, "Juan Ortiz" is not simply a nickname of Rogasciano Santiago. Instead it is a falsely assumed identity.

¶ 98    Santiago assumed his alias to avoid detection and to illegally gain employment in the United States. He even went so far as to have a separate identification card for Juan Ortiz with a different birth date. Santiago used both his false name and his true name in a number of different jobs, creating completely separate work, medical and financial histories. The lead opinion disagrees with the appellate court's assessment that "there is no question that 'Juan

-21-

Ortiz' is not the legal name of a natural person, and therefore any action commenced on behalf of Juan Ortiz is null and void." See *supra* ¶ 27; 406 Ill. App. 3d at 464. But under these circumstances, I completely agree with the appellate court that Juan Ortiz was not the legal name of a natural person. In fact, "Juan Ortiz" was not the valid name of a person at all as far as this case is concerned.

¶ 99 The lead opinion woefully misapprehends the appellate court's holding when it characterizes it as claiming that a complaint is a nullity whenever a person "files a complaint using a name other than his or her 'legal' name." See *supra* ¶ 29. But this is most certainly not what the appellate court held. Instead, the appellate court held that a plaintiff "who *intentionally* conceals his identity by filing suit under a false name," using a false identity, cannot rely on the relation-back doctrine. (Emphasis in original.) See 406 Ill. App. 3d at 464-66. The appellate court's holding would seem to be sound public policy and is seamlessly in line with Illinois precedent. The appellate court was also careful to note that its holding was not meant to be read as broadly as the lead opinion suggests:

> "We note that our holding on this point is limited to the specific factual situation presented by the certified question, that is, to a situation in which a plaintiff intentionally files a complaint under a false name without leave of court. Our holding does not address any other situations ***. We therefore express no opinion on those issues." 406 Ill. App. 3d at 466.

¶ 100 As a final matter, I believe that this court must consider the misnomer statute, which provides in relevant part that "[m]isnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time." 735 ILCS 5/2-401 (West 2008). The statute also implies the converse—that is, if the misnaming of a party is not considered a misnomer, it may be grounds for dismissal and the name may not be able to be corrected at any time. Santiago's main argument (and his only argument other than that he used a validly assumed alias) is that the use of "Juan Ortiz" was a mere misnomer that could be corrected.

¶ 101 I would find Santiago's argument to be without merit. Misnomer is "[a] *mistake* in naming a person *** in a legal instrument." (Emphasis added.) Black's Law Dictionary 1090 (9th ed. 2009). Indeed, our appellate court has repeatedly recognized that "[m]isnomer is a mistake in name or the provision of an incorrect name to the person in accusation or pleading." See, *e.g.*, *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 806 (2009); *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 156 (2000). Ordinarily, a misnomer can be corrected through a motion to amend. Misnomer, however, must be distinguished from mistaken identity. *Illinois Institute of Technology*, 314 Ill. App. 3d at 156. If mistaken identity occurs, amendment must meet the requirements of the relation-back provision of section 2-616 of the Code. *Estate of Henry v. Folk*, 285 Ill. App. 3d 262, 264 (1996).

¶ 102 To begin with, the present case is the "relatively unusual" situation where a plaintiff has improperly identified himself. See *Illinois Institute of Technology*, 314 Ill. App. 3d at 156. What makes this case completely unique to Illinois law, however, is that Santiago intentionally adopted a false identity and named himself using that identity rather than his true identity. Furthermore, the deliberately adopted false identity was a fictitious name, not

a validly assumed alias as discussed above. A variety of fact patterns have been decided by the appellate court where plaintiffs have simply misstyled or misidentified themselves by mistake, but none of those cases are factually similar to the present case. For example, in *Musburger*, 394 Ill. App. 3d at 805, the plaintiff misstyled itself as "The Law Offices of Todd W. Musburger, Ltd.," rather than "Todd W. Musburger, Ltd." In *Illinois Institute of Technology*, the widow of a deceased worker in a workers' compensation case named herself as the correct party, but in the wrong capacity. See *Illinois Institute of Technology*, 314 Ill. App. 3d at 157. In *Bristow v. Westmore Builders, Inc.*, 266 Ill. App. 3d 257, 259-60 (1994), the plaintiff misstyled himself in his initial complaint as a corporation—"Manning Bristow Painting and Decorating, Inc."—rather than as a sole proprietorship—"Manning Bristow d/b/a Manning Bristow Painting and Decorating." In *Calvert Distillers Co. v. Vesolowski*, 14 Ill. App. 3d 634, 636 (1973), the plaintiff styled its name as "House of Seagram, Inc.," but the actual plaintiff was "Joseph E. Seagram and Sons, Inc.," the company into which the House of Seagram, Inc., had merged. Here, in stark contrast to the above-discussed cases, Santiago adopted the false identity of Juan Ortiz and filed suit under that identity. Thus, I would find that this case is not a misnomer, but instead falls more under a mistaken-identity classification (where the wrong party is named and which usually occurs when a plaintiff sues the wrong party). See *Fitzpatrick v. Pitcairn*, 371 Ill. 203, 208 (1939). The only difference in this case is that there was no mistake—Santiago deliberately misidentified himself and substituted an alternate identity for his true identity. Santiago's conduct was thus doubly egregious for purposes of a misnomer analysis, as he sued under a false identity and there was no mistake about it.

¶ 103    Here, the certified question accepts that Santiago intentionally filed the complaint in the wrong name, which necessarily means that he did not make a mistake. I agree with the appellate court's conclusion below that the misnomer doctrine is not intended for use by a plaintiff who intentionally conceals his identity by filing suit under a false name, and Santiago has not directed us to any authority to the contrary. See 406 Ill. App. 3d at 465. Moreover, he cannot use the doctrine to validate what is otherwise a null pleading under the circumstances here.

¶ 104    For all of the reasons set forth above, I would find that the appellate court properly found that Santiago's cause of action should be dismissed with prejudice on the ground that the limitations period had expired and that the relation-back doctrine did not save the suit under the circumstances. Accordingly, I respectfully dissent.

¶ 105    JUSTICE GARMAN joins in this dissent.