(No. 15534.—Decree affirmed.)
OMA MILLER et al. Defendants in Error, vs. KATE MOSELEY
et al. Plaintiffs in Error.

*Opinion filed February 19, 1924.*

1. PARTITION—*when court has jurisdiction of party regardless of question of summons.* The question whether a party to a partition suit was duly served with summons is not material, where she has submitted to the jurisdiction of the court by filing a petition to set the partition sale aside on the sole ground that the amount bid for the property was too low, without making any claim at that time that she was not properly served with summons.

2. SAME—*plaintiffs in error cannot raise question of jurisdiction of parties not assigning error.* Plaintiffs in error cannot raise the question that the court did not acquire jurisdiction of other defendants who are not complaining of the decree and have assigned no errors.

3. SAME—*when cross-bill is unnecessary.* A cross-bill is unnecessary where all the matters provided for in the decree are set up and prayed for in the bill itself.

4. SAME—*when decree may order payment of claims to administrator.* The court in a partition decree of sale may order the payment to the administrator of a deceased party of claims allowed against his estate and which are not disputed, where the bill prays that such claims be paid out of the interest which descended to the deceased party's heirs.

5. SAME—*when mistake in mortgage will not cause reversal of decree for its payment.* A mistake in a description in a mortgage in failing to include forty acres of the mortgagor's land and including a like portion which she did not own will not cause reversal of a decree in partition directing that the mortgage be paid out of the sale of the mortgagor's interest in the entire tract, where the mortgagor did not raise the question in the lower court and only joined in a proceeding to set aside the sale because the land did not sell for as much as was expected.

6. SAME—*when partition sale will not be set aside second time.* Where a partition sale subject to a life estate is set aside on petition of the parties, in which the life tenant joined, agreeing to take the cash value of her life estate so that the land would bring more money, and a second sale is had free from the incumbrance of the life interest, the Supreme Court will not, in the absence of prejudicial errors, reverse the second decree of sale merely because the parties are dissatisfied with the amount bid at the second sale.

WRIT OF ERROR to the Circuit Court of Perry county; the Hon. GEORGE A. CROW, Judge, presiding.

S. M. WARD, for plaintiffs in error.

H. F. KNOX, W. O. EDWARDS, and NELSON B. LAYMAN, guardian *ad litem,* for defendants in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is a writ of error to review a decree entered in a partition suit. The facts are complicated, and as the briefs of neither party make any statement of them, we have been compelled to get them from the abstract of the bill.

The original bill appears to have been filed March 20, 1919, an amended bill November 9, 1921, and March 14, 1922, a second amended bill was filed, under which the decree was entered. The second amended bill is the only bill contained in the abstract, and it asks the partition of 360 acres of land and other incidental relief. The complainants in the bill are Oma Miller and Mildred Sappington, an infant, by Julia Sappington, her next friend. The bill alleges that on January 29, 1895, William Frye, who was then the owner of the land described in the bill, conveyed it to Kate Rees, (now Moseley,) Della Rees, Robert Rees and Estella Rees, (afterwards Estella Churchill,) subject to a life estate in Emma Rees. For convenience, as will hereafter be seen, the interests of the grantees of Frye will be referred to as 80ths. Each of the grantees named became seized of 20/80ths of the 360 acres of land by the deed from Frye. Robert Rees, one of the grantees, on September 13, 1913, executed a mortgage on his interest to his then wife, (now complainant Oma Miller,) to secure a note for $600, due in twelve months, with interest at five per cent, which mortgage was subject to the life estate of

Emma Rees. Robert Rees died intestate February 21, 1915, leaving no child nor descendants of a child, but leaving surviving him as his heirs, his widow, (now Oma Miller,) his mother, Emma Rees, and his brothers and sisters, Kate Moseley, Della Rees, Estella Rees Churchill, Edward Rees, Lora Duty, J. M. Rees, E. A. Rees and Arizona Teaney, the last three being of the half-blood. Letters of administration were granted on the estate of Robert Rees, and claims aggregating over $600 were filed and allowed against his estate. By the death of Robert Rees his widow inherited 10/80ths of his 20/80ths of the land, his mother 2/80ths and each of his surviving brothers and sisters 1/80th, but the bill alleges the interests so inherited by said parties were subject to the $600 mortgage given by Robert Rees to his wife and also to the payment of the claims allowed against Rees' estate. The bill further alleges that on the 21st day of July, 1915, Kate Moseley gave a mortgage on her interest in all the lands to Wendell Berry to secure a note for $2000, due four months after date, with interest at six per cent, but that said mortgage was subject to the life estate of Emma Rees, and that the 1/80th interest she inherited from Robert Rees was subject to the $600 mortgage to Oma Miller and to the payment of claims against the estate of Robert Rees; that August 20, 1918, Estella Rees Churchill executed a deed to Louis Reed of her interest in the land, which deed the bill alleges was made to secure a loan of $1000; that the deed was subject to the life estate of Emma Rees, and the 1/80th interest in the land conveyed by it was subject to the $600 mortgage made by Robert Rees and to the payment of claims allowed against his estate. Mrs. Churchill on October 28, 1918, died testate, and by her will devised all her interest in the land to Mildred Sappington, an infant. The bill alleges Louis Reed on May 14, 1919, made a deed purporting to convey Mrs. Churchill's interest in the land to Jennie Reed; that the conveyance was a fraud, as the grantor's deed from

Mrs. Churchill was made to secure a loan and was a mortgage, and that the deed amounted to an assignment of the mortgage lien to Jennie Reed, who became subrogated to the rights of her grantor; that the 1/80th interest Mrs. Churchill inherited from Robert Rees was subject to its equitable proportion of the $600 mortgage and to pay its proportionate share in the payment of claims allowed against the estate of Rees. The bill prays that the mortgage liens and the claims against the estate of Rees be decreed to be paid by the owners of interests in the land subject to their payment and that the land be partitioned; that in the event it could not be partitioned that it be sold and the sums found due on the mortgages and allowed claims against Rees' estate be decreed to be paid out of the sale of the interests of the parties which were liable to pay the same, in accordance with their respective rights and interests.

The guardian *ad litem* for the minor complainant filed a formal answer. No answer was filed by any defendant but all were defaulted. Commissioners appointed to make partition reported the land was not susceptible of division, and a decree for its sale was entered, subject to the life estate of Emma Rees. The court decreed that the amounts of the mortgages found due should be paid out of the proceeds of the sale of the interests, which were liable for their payment, and that the amount of the allowed claims against Robert Rees' estate be paid out of the sale of the interests inherited from him by his heirs, according to their respective shares. The land was sold under the decree on October 21, 1922. The complainants in the bill, Oma Miller and Mildred Sappington, and Kate Moseley and Emma Rees, defendants, were dissatisfied with the price it was sold for, which was $11,500, and filed their motion and petition to set aside the sale. They alleged the price the land brought was inadequate; that the sale subject to the life estate of Emma Rees prevented it bringing its value, and they asked the sale be

set aside and another sale ordered. The petition alleged that Emma Rees desired to consent to the sale of her life estate and accept its value in money; that she had signed her consent in writing to its sale if the first sale was set aside; that she be given the value of her life estate, and asked that the property be re-appraised and sold free from that incumbrance, and alleged they had two or more responsible bidders who would give as much as $22,800 for the land if sold free from the life estate of Emma Rees. E. A. Rees, Arizona Teaney and J. M. Rees also filed exceptions to the sale on the same ground alleged by Kate Moseley, Emma Rees and Oma Miller, as did also Della Rees. The court entered a decree disapproving the master's report of sale, setting the same aside and ordering a re-sale of the land free from the life estate of Emma Rees. At the second sale it brought $15,850. Emma Rees filed objections to the master's report of the second sale, asked the court to set aside and strike from the files her consent in writing that the land be sold free from her life estate, asked to be allowed to plead to the merits of the bill, and set up various and sundry reasons why the master's report should be disapproved and the sale set aside. The court denied the motion and approved the sale.

The only parties assigning errors and asking a reversal of the decree are Emma Rees, Kate Moseley and Della Rees. They assign twenty-eight separate and distinct errors for which they claim the decree should be reversed.

It is first complained that the court did not acquire jurisdiction of the person of Della Rees by service of process. We have not considered it necessary to ascertain whether she was duly served by summons or not. When she filed her petition to set the sale aside she submitted herself to the jurisdiction of the court, and she did not then claim she had never been properly served with summons. The only thing she complained of was that the land did not sell for enough money.

311—11

Several of the errors assigned allege the court did not acquire jurisdiction of other defendants who are not complaining and have assigned no errors, and plaintiffs in error cannot complain for them.

Some of the errors assigned allege the court erred in decreeing the payment of the mortgages and the allowed claims against the estate of Robert Rees without the filing of a cross-bill by the parties interested. The bill set up all those matters and asked that the payment be decreed. No cross-bill was necessary. (*Roby* v. *South Park Comrs.* 252 Ill. 575.) We think the court was authorized to order the payment to the administrator of Robert Rees of the claims allowed against his estate, the validity of which claims was never disputed, out of the interest in the land which descended to his heirs. *Brown* v. *Sunderland,* 251 Ill. 523.

It is also complained that the court erred in decreeing the payment of the Kate Moseley mortgage out of the sale of her interest in the 360 acres of land described. It appears one 40-acre tract was not described in the mortgage, but that 40 acres in which Kate Moseley had no interest were described. Evidently that was done by mistake. The decree does not so find, but ordered the mortgage paid out of the money arising out of the sale of her interest in the 360 acres. If the bill had alleged and the decree had found Kate Moseley intended to mortgage her interest in the entire 360 acres but by mistake omitted one 40 and mortgaged 40 acres she had no interest in, it would have been entirely proper to decree the payment of the mortgage out of her interest in the 360 acres. She is the only party affected by that alleged error, and she did not raise that question at any time in the court below, although after the decree had been entered and the property sold she joined in a proceeding to set the sale aside because the land did not sell for enough money. So far as the record shows, she raises the question here for the first time. Besides, the error is only technical and does not in any wrongful way affect her real

rights. Her land was ordered sold to pay the debt which she does not dispute she owed, and we do not think the decree should be reversed on that ground.

We have examined the other errors assigned but do not regard them as of sufficient importance to justify discussing them in detail. A number of them in no way affect the rights of the only parties assigning error. It is apparent the real cause for suing out this writ of error is because the parties prosecuting the writ are dissatisfied with the price the land brought at the sale and hope by the writ of error to reverse the decree and procure another sale. As we have before stated, at the first sale the land sold for $11,500, subject to the life estate of Emma Rees. On the motion and petition to set that sale aside all three of the plaintiffs in error who are seeking to reverse the decree alleged the land sold for much less than its value because it was sold subject to the life estate of Emma Rees, who said she desired then to agree to accept the cash value of her life estate and have the land sold free from that incumbrance. They represented they had responsible bidders who had offered to pay $22,800 for the land if sold free from the life estate. The court set the sale aside, Emma Rees released her life estate and the land was again sold for $15,850. Emma Rees again objected to the sale and asked to withdraw her consent to the sale free from her life estate and plead to the merits. We are warranted in the conclusion that the only reason for suing out this writ of error is to secure another sale in the hope the land will bring more money. That would not justify affirming the decree if error had been committed prejudicial to the rights of the complaining parties, but we are of opinion no such errors were committed.

The decree is affirmed.                    *Decree affirmed.*