# Illinois Official Reports

## Appellate Court

---

### *Odle v. Department of State Police*, 2015 IL App (5th) 140274

---

| | |
|---|---|
| Appellate Court Caption | JOSHUA ODLE, Petitioner-Appellee, v. THE DEPARTMENT OF STATE POLICE, Respondent-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-14-0274 |
| Filed | November 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Williamson County, No. 13-MR-60; the Hon. Brad K. Bleyer, Judge, presiding. |
| Judgment | Motions denied; order reversed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for appellant.<br><br>Sharee S. Langenstein, of Law Office of Sharee S. Langenstein, of Murphysboro, for appellee. |
| Panel | JUSTICE CHAPMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Cates and Justice Goldenhersh concurred in the judgment and opinion. |

¶ 1      The petitioner, Joshua Odle, pled guilty to one count of battery. In exchange for his plea, the State dropped additional charges of domestic battery and aggravated battery of a child. According to the petitioner, the State's Attorney also represented to him that in exchange for his plea, his firearm owners identification card (FOID card) would not be revoked. After his plea was entered, however, the Illinois State Police revoked the petitioner's FOID card because of his conviction. The petitioner filed a petition seeking to overturn the decision of the State Police (see 430 ILCS 65/10 (West 2012)). Although the petitioner named the State Police as the respondent, he served process on the Williamson County State's Attorney. The court entered an order directing the State Police to issue a FOID card to the petitioner. The State Police filed a motion to vacate that order, which the court denied.

¶ 2      The State Police appeals, arguing that (1) the petitioner failed to exhaust his administrative remedies before seeking review in the circuit court; and (2) the court did not have the discretion to order the State Police to issue a FOID card to the petitioner because he is excluded from possessing a firearm under federal law due to his conviction. The petitioner filed a motion to correct misnomer and a motion to dismiss this appeal, arguing that (1) he mistakenly named the State Police, rather than the Williamson County State's Attorney, as the respondent; and (2) because the State Police is not the correct respondent, it lacks standing to pursue this appeal. We deny the petitioner's motions, and we reverse the circuit court's order.

¶ 3      This appeal requires us to construe provisions of the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/0.01 *et seq.* (West 2012)). The FOID Act requires Illinois residents who wish to acquire and possess a firearm to apply for a FOID card from the State Police. 430 ILCS 65/2 (West 2012). The FOID Act provides specific grounds on which the State Police has the authority to deny an application or revoke a previously issued FOID card. 430 ILCS 65/8 (West 2012). In pertinent part, the State Police may deny an application or revoke a FOID card if the applicant or FOID card holder is prohibited under any state or federal statute from acquiring or possessing a firearm. 430 ILCS 65/8(n) (West 2012).

¶ 4      The relevant federal provision in this case is section 922(g)(9) of the Gun Control Act of 1968 (Gun Control Act), which provides that it is unlawful for any person "who has been convicted *** of a misdemeanor crime of domestic violence" to acquire, transport, or possess a firearm. 18 U.S.C. § 922(g)(9) (2012). The Gun Control Act defines a "misdemeanor crime of domestic violence" as any misdemeanor offense which "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim" or by a person having other specified relationships with the victim. 18 U.S.C. § 921(a)(33)(A) (2012). In *United States v. Hayes*, 555 U.S. 415, 418 (2009), the United States Supreme Court held that this definition includes convictions such as the one at issue in this case−misdemeanor battery convictions where the victim and defendant in fact have one of the relationships listed in the statute even though the offense charged does not include the domestic relationship as an element of the offense. The Court reached this conclusion in large part because while "[f]irearms and domestic strife are a potentially deadly combination nationwide," domestic violence is

commonly prosecuted under general assault or battery provisions, as happened here. *Id*. at 426-27.

¶ 5    A person whose application is denied or whose FOID card is revoked may seek review of that decision, either by appealing to the Director of State Police or by filing a petition for review in the circuit court. Which avenue of relief is available depends on the grounds for the denial or revocation. 430 ILCS 65/10(a) (West Supp. 2013).

¶ 6    Prior to a 2013 amendment, the FOID Act provided that courts could grant petitioners relief from denial or revocation if certain requirements were met (430 ILCS 65/10(c)(1), (c)(2), (c)(3) (West 2010)) and the court determined that "substantial justice" had not been done (430 ILCS 65/10(b) (West 2010)). In *Coram v. State of Illinois*, the Illinois Supreme Court interpreted this statute as allowing courts to grant relief even if the petitioner was prohibited from possessing a firearm under federal law. *Coram v. State of Illinois*, 2013 IL 113867, ¶¶ 56, 59; see also *Hiland v. Trent*, 373 Ill. App. 3d 582, 585 (2007).

¶ 7    The 2013 amendment added two relevant provisions to section 10 of the FOID Act. Subsection (c) was amended to include an additional requirement that must be established before a court can grant relief. The court must now find that issuing a FOID card "would not be contrary to federal law." 430 ILCS 65/10(c)(4) (West Supp. 2013); Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013). Subsection (b) was amended to include a limitation that mirrors this new required finding. That subsection provided, both before and after the amendment, that a court "shall" order the State Police to issue a FOID card if it finds that "substantial justice has not been done." 430 ILCS 65/10(b) (West Supp. 2013). The amendment added the following restriction: "However, the court shall not issue the order if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law." 430 ILCS 65/10(b) (West Supp. 2013); Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013). A key issue in this appeal is whether this amendment changes the result in *Coram*.

¶ 8    The events giving rise to the proceedings at issue took place in May 2011. At that time, the petitioner held a FOID card. A Williamson County sheriff's department incident report indicates that the petitioner's two children were spending the night with him when the petitioner sent a series of text messages to the children's mother, Elizabeth Odle. The petitioner told her that he had "whipped" their five-year-old son, Hunter, on his buttocks. He then told her, "He is gonna have black bruises on his butt. Don't be mad." The report further indicates that when the children returned home, Elizabeth saw that Hunter had severe bruises. She asked Hunter what happened, and he told her, "Daddy wouldn't quit hitting me." Elizabeth Odle provided photographs in which the bruises were "clearly visible" to the officer who took her statement.

¶ 9    The petitioner was charged with one count each of aggravated battery of a child (720 ILCS 5/12-4.3(a-5) (West 2010)), domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2010)), and battery (720 ILCS 5/12-3(a)(1) (West 2010)). On December 15, 2011, he pled guilty to the charge of battery. The State dropped the charges of domestic battery and aggravated battery of a child in exchange for the petitioner's plea. According to the petitioner, the State's Attorney also promised him, in exchange for his plea, that his FOID card would not be revoked. The petitioner was sentenced to 12 months of probation.

¶ 10   On August 27, 2012, the Department of State Police sent the petitioner a letter informing him that his FOID card had been revoked. The letter stated that the reason for the revocation was the petitioner's conviction for a battery "as a result of an incident involving domestic

- 3 -

violence." The letter went on to explain that, under state and federal law, a person convicted of any crime involving domestic violence is prohibited from possessing or acquiring a firearm and, as such, ineligible for a FOID card.

¶ 11 On March 8, 2013, the petitioner filed a petition for relief from firearms prohibition. He alleged his battery conviction did not disqualify him from firearm ownership under the FOID Act. He further alleged that (1) "substantial justice" was not done in revoking his FOID card (430 ILCS 65/10(b) (West Supp. 2013)); (2) the circumstances of his underlying conviction were "unlikely to reoccur [*sic*]"; (3) a firearm was not involved in the commission of the underlying offense; (4) the petitioner had never been convicted of a forcible felony (see 430 ILCS 65/10(c)(1) (West Supp. 2013)); (5) the petitioner was unlikely to act in a manner dangerous to public safety (see 430 ILCS 65/10(c)(2) (West Supp. 2013)); and (6) granting the requested relief would not be contrary to the public interest or to federal law (see 430 ILCS 65/10(c)(3), (c)(4) (West Supp. 2013)).

¶ 12 The petition named the Illinois Department of State Police as the sole respondent; however, the petitioner served process only on the Williamson County State's Attorney's office. See 430 ILCS 65/10(b) (West Supp. 2013). The State's Attorney filed an objection to the petition, arguing that (1) the petitioner was prohibited from acquiring or possessing a firearm under federal law; and (2) under the FOID Act, the circuit court did not have the authority to order the State Police to issue a FOID card to any person prohibited from acquiring or possessing a firearm under federal law.

¶ 13 On August 14, the court entered a written order containing the following findings: (1) the petitioner's underlying conviction did not involve the use of a firearm; (2) the circumstances surrounding the conviction were "unlikely to reoccur [*sic*]"; (3) the circumstances surrounding the petitioner's conviction were such that he would not be likely to act in a manner dangerous to public safety; (4) the petitioner had not been convicted of a forcible felony; (5) granting relief would not be contrary to the public interest; (6) granting relief would not be contrary to federal law; and (7) "substantial justice has not been done and the Department of State Police should issue the Petitioner a Firearm Owners Identification Card." The court ordered the State Police to issue a FOID card to the petitioner.

¶ 14 On September 13, 2013, the State Police filed a motion to vacate the court's order. It argued that (1) because the Department of State Police was not served, the order against it was void for lack of personal jurisdiction; (2) the petitioner was prohibited from acquiring or possessing a firearm under federal law because his conviction was for a "misdemeanor crime of domestic violence"; (3) granting relief would be contrary to the public interest and federal law; and (4) the FOID Act does not allow courts to order the State Police to issue a FOID card to a petitioner in contravention of federal law. The State Police subsequently filed a supplemental memorandum of law in support of its motion to vacate the order. It argued that (1) the petitioner failed to exhaust his administrative remedies under the FOID Act before petitioning the circuit court; and (2) the supreme court's holding in *Coram* was superseded by the January 2013 amendment to the FOID Act.

¶ 15 On May 2, 2014, the court denied the State Police's motion to vacate in a docket entry. The court found that the amendment to the FOID Act did not alter the result reached by our supreme court in *Coram* in "cases like the present where the court has specifically determined that granting relief would not be contrary to the public interest." The court thus found *Coram*

to be controlling. Under "the unique circumstances of this case," the court concluded, the motion to vacate must be denied.

¶ 16    The State Police filed the instant appeal on June 2, 2014. The petitioner filed a motion to dismiss the appeal and a motion to correct a misnomer in the caption of his petition. We ordered the petitioner's motions taken with the case. We now deny both motions.

¶ 17    In support of his motion to correct misnomer, the petitioner alleges that he intended to name the Williamson County State's Attorney's office as the lone respondent. He asserts that the fact that he served the State's Attorney's office, rather than the State Police, provides support for this allegation. In addition, he points out that the misnomer of a party may be corrected at any time, even after judgment. See 735 ILCS 5/2-401(b) (West 2012). We are not persuaded.

¶ 18    Section 2-401(b) of the Code of Civil Procedure provides as follows: "Misnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." *Id*. There is a difference between a misnomer−which occurs when a party files an action against the correct party under an incorrect name−and mistaken identity−which occurs where the petitioner names the wrong party. *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 806 (2009). Only a true misnomer can be corrected as a matter of course under the misnomer statute. Whether a case involves a misnomer or mistaken identity depends on the intent of the parties. *Id*.

¶ 19    The misnomer statute, where applicable, prevents an opposing party from forcing the dismissal of a case due to a mistake in the name of the party. *Id*. (citing *Bristow v. Westmore Builders, Inc*., 266 Ill. App. 3d 257, 261 (1994)). The petitioner's request to correct what he now claims is a misnomer is at odds with this principle. The petitioner did not seek to amend the caption of his petition at any time during the proceedings below, even after the State Police filed its motion to vacate. As the State Police points out, had the circuit court granted a motion to correct misnomer, the State Police could have filed a motion to intervene. The petitioner wants this court to grant the motion to correct misnomer, allow him to remove the State Police as a party, and then dismiss the appeal on the basis that the State Police was never a party to the proceedings. This is not what the misnomer statute is for. We therefore deny the petitioner's motion to correct misnomer.

¶ 20    In support of his motion to dismiss this appeal, the petitioner argues that (1) the real respondent is the State's Attorney; (2) the State Police did not file a motion to intervene; and (3) the State Police was not a necessary party to these proceedings. In support of these contentions, the petitioner cites *Williams v. Tazewell County State's Attorney's Office*, 348 Ill. App. 3d 655 (2004). We find *Williams* inapposite.

¶ 21    There, the petitioner's application for a FOID card was denied by the State Police due to a previous conviction for domestic battery. *Id*. at 656. The petitioner sought review of that decision in the circuit court, naming as the sole respondent the Tazewell County State's Attorney's office. *Id.* at 657. The circuit court overturned the State Police's decision to deny the petitioner's application. *Id*. The State Police then filed a special and limited appearance and a petition to vacate the court's judgment, arguing that the court lacked personal jurisdiction over the State Police because it was neither named as a party nor served with process. *Id*. The trial court rejected this contention, finding that the applicable statute did not require that the State Police be served. *Id*. at 658.

¶ 22    On appeal, the State Police argued, among other things, that the circuit court's order was void for lack of personal jurisdiction. *Id*. at 659. The Third District rejected this argument for essentially the same reason the circuit court rejected it. The court explained that the applicable provision of the FOID Act requires service of the State's Attorney, but does not require the petitioner to serve the State Police or name it as a party. *Id*. (citing 430 ILCS 65/10 (West 2002)). As such, the court concluded, the State Police was not a necessary party to the proceedings, and personal jurisdiction over it was not necessary. *Id.*

¶ 23    The petitioner in this case correctly states the holding of *Williams*. However, the dispositive question in ruling on his motion to dismiss is different from the question resolved by the *Williams* court. There, as just discussed, the question was whether the circuit court's order must be vacated for lack of personal jurisdiction over the State Police. Here, the State Police raised that claim before the circuit court, but does not raise that argument on appeal. The petitioner does not have standing to challenge the circuit court's personal jurisdiction over another party. See *Miller v. Moseley*, 311 Ill. 157, 162 (1924). Instead, the question before us is whether the State Police may appeal an adverse ruling on its motion to vacate. *Williams* does not support the petitioner's claim that the State Police may not do so. It is worth noting that there, the appeals court considered the arguments of the State Police on their merits even though the State Police was not named as a party. Although the *Williams* court did not directly address the question of standing, a court is required to consider its own jurisdiction over a case *sua sponte* (*Shermach v. Brunory*, 333 Ill. App. 3d 313, 320 (2002)), and determining whether a party has standing to bring the appeal is part of this obligation (*Riley v. Physicians Weight Loss Centers, Inc*., 192 Ill. App. 3d 23, 31 (1989)).

¶ 24    Here, the State Police has been named as a party, and we have denied the petitioner's motion to correct misnomer. Obviously, a named party has standing to appeal a judgment entered against it. Furthermore, even if we were to grant the motion to correct misnomer, we would find that the State Police has standing to pursue this appeal. A state agency has standing to file an appeal in a case in which it has a direct and substantial interest in the outcome even if it was not named as a party. See *In re O.H.*, 329 Ill. App. 3d 254, 257-58 (2002) (citing *People v. Pine*, 129 Ill. 2d 88 (1989), and *People v. White*, 165 Ill. App. 3d 249 (1988)). Here, the court's order overturned a decision of the State Police and directed the State Police to act. We find that the State Police has standing to pursue this appeal. Thus, we deny the petitioner's motion to dismiss. We turn now to the merits of the State Police's contentions.

¶ 25    As stated previously, this decision requires us to construe provisions of the FOID Act. Our primary goal in construing statutes is to ascertain and effectuate the intent of the legislature. The best evidence of legislative intent is the express language of the statutes. *Miller v. Department of State Police*, 2014 IL App (5th) 130144, ¶ 20. Statutory language should be given its plain and ordinary meaning. If a statute is clear and unambiguous, we need not look beyond its language or resort to other aids of statutory construction. *Id*.

¶ 26    The State Police first argues that the circuit court lacked subject matter jurisdiction to consider the petitioner's claim because he failed to exhaust his administrative remedies prior to filing his petition with the court. We disagree.

¶ 27    Section 10(a) of the FOID Act provides that a party seeking review of the revocation of his or her FOID card "may appeal to the Director of State Police for a hearing *** unless the *** revocation *** was based upon" any one of a specified list of criminal offenses. 430 ILCS 65/10(a) (West Supp. 2013). The list includes domestic battery, but it does not include battery.

*Id.* The statute further provides that where the revocation is based upon one of the listed offenses, "the aggrieved party may petition the circuit court in writing in the county of his or her residence." *Id.* The State Police points out that the petitioner pled guilty to battery, not domestic battery. It argues that because battery is not one of the listed offenses, the petitioner was required to appeal to the Director of State Police. We are not persuaded.

¶ 28 This court rejected a similar argument in *Miller v. Department of State Police*, 2014 IL App (5th) 130144. We explained as follows:

> "The plain language of section 10(a) *** provides that an aggrieved party may appeal to the circuit court if the revocation of his FOID card was '*based upon*' one of the enumerated offenses. Nowhere in the statute did the legislature impose the limitation that the aggrieved party must be convicted of one of the enumerated offenses ***." (Emphasis added.) *Id.* ¶ 22.

See also *O'Neill v. Director of the Illinois Department of State Police*, 2015 IL App (3d) 140011, ¶ 19.

¶ 29 Here, the revocation of the petitioner's FOID card was *based upon* the domestic nature of his battery conviction. Thus, we find that he was entitled to seek review in the circuit court without first exhausting other avenues of administrative relief.

¶ 30 The State Police next contends that the court erred in finding that it had discretion to overturn the decision to revoke the petitioner's FOID card because he is not allowed to acquire or possess a firearm under federal law. We agree.

¶ 31 The dispositive question is the effect of the 2013 statutory amendments discussed earlier in this decision. In *Coram*, those amendments were not applicable. Justice Karmeier noted "in passing" in his plurality opinion that the statute had been amended subsequent to the 2010 proceedings at issue there. *Coram*, 2013 IL 113867, ¶ 75. He stated, in *dicta*, that the amendments would not change the result because "[r]elief granted pursuant to statutory review *removes* the federal firearm disability." (Emphasis in original.) *Id.* The four justices who joined in a special concurrence and a dissent did not agree with this interpretation. *Id.* ¶ 101 (Burke, J., specially concurring, joined by Freeman, J.) (explaining that "[t]he amendments make clear that a circuit court no longer has the authority to make findings or grant relief under section 10 if the court concludes the applicant would be in violation of federal law if he or she were to possess a firearm"); *id.* ¶¶ 123-24 (Theis, J., dissenting, joined by Garman, J.).

¶ 32 It is unclear how much weight to give the opinions expressed in the special concurrence and dissent regarding the effect of the amendments. *People v. Frederick*, 2015 IL App (2d) 140540, ¶¶ 33-34; see also *O'Neill*, 2015 IL App (3d) 140011, ¶ 26 (noting that appeals courts "are left to read the tea leaves based on what the supreme court has said on the issue"). However, two districts of the appellate court have considered the question directly and have concluded that the amendments require a different result from that reached in *Coram*. See *Walton v. Illinois State Police*, 2015 IL App (4th) 141055, ¶ 24; *Frederick*, 2015 IL App (2d) 140540, ¶¶ 33-34. (We note that the Third District reached the same result in *O'Neill*. There, however, the court stated that there were "certainly arguments to be made" in support of Justice Karmeier's interpretation in the *dicta* in *Coram*; however, the petitioner/appellee did not file a brief, and the court did not believe it was appropriate to make those arguments for him. *O'Neill*, 2015 IL App (3d) 140011, ¶ 28.)

¶ 33       We agree with those courts holding that the amendments change the result of *Coram*. As amended, section 10 requires courts to find that granting relief would not be contrary to federal law (430 ILCS 65/10(c)(4) (West Supp. 2013)), and it expressly prohibits courts from ordering the State Police to issue a FOID card if doing so would be contrary to federal law (430 ILCS 65/10(b) (West Supp. 2013)). Giving this statutory language its plain and ordinary meaning, as we must (see *Miller*, 2014 IL App (5th) 130144, ¶ 20), the statute no longer allows courts to order the State Police to issue a FOID card if the petitioner is prohibited from possessing a firearm under federal law. In addition, we must presume that the legislature intended to change the law when it amended the statute. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 299 (2010). The interpretation urged by the petitioner would render the amendatory language meaningless and ineffective. We conclude that the FOID Act prohibits the court from ordering the State Police to issue a FOID card.

¶ 34       Finally, we briefly address the petitioner's second amendment arguments. He contends that the interplay between the FOID Act and the federal Gun Control Act could lead to a permanent prohibition on gun ownership. This is because the Gun Control Act provides that the federal prohibition against acquiring or possessing a firearm as a result of a conviction for a "misdemeanor crime of domestic violence" ends when the person's civil rights are restored, if the state in which the conviction occurred provides for the restoration of civil rights after a conviction. 18 U.S.C. § 921(a)(33)(B)(ii) (2012). In Illinois, however, an individual convicted of a misdemeanor does not lose any civil rights as a result of the misdemeanor and, as such, cannot have any rights restored within the meaning of the Gun Control Act. See *Coram*, 2013 IL 113867, ¶ 18. The petitioner argues that this result violates his rights to keep and bear arms under the second amendment.

¶ 35       As the State Police points out, the petitioner did not raise this constitutional claim before the circuit court. As such, he has forfeited consideration of the issue on appeal. See *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d 555, 567-68 (1988); *People v. Myles*, 131 Ill. App. 3d 1034, 1046 (1985). Moreover, even if we were to consider the constitutional challenge on its merits, we would reject the petitioner's claim.

¶ 36       The rights to keep and bear arms, like other constitutional rights, are not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The prohibition on firearm ownership and possession by people convicted of crimes of domestic violence has been upheld repeatedly. *United States v. Skoien*, 614 F.3d 638, 642-44 (7th Cir. 2010); *Enos v. Holder*, 855 F. Supp. 2d 1088, 1098-99 (E.D. Cal. 2012). The rationale behind this prohibition is that people convicted of crimes based on acts of domestic violence pose a danger to members of their families due to a high rate of recidivism. See *Hayes*, 555 U.S. at 426-27; *Skoien*, 614 F.3d at 642-44; *Enos*, 855 F. Supp. 2d at 1098-99. However, both federal and state courts have noted that a lifelong prohibition might raise constitutional questions. See, *e.g.*, *O'Neill*, 2015 IL App (3d) 140011, ¶ 29; *Skoien*, 614 F.3d at 645. In *Coram*, our supreme court found it unnecessary to address the constitutional question (*Coram*, 2013 IL 113867, ¶ 56), but the court noted that "Congress obviously did not believe it reasonable or necessary to impose a perpetual firearm disability on anyone in the listed categories in section 922(g)" (*id*. ¶ 61).

¶ 37       The rationale underlying these concerns is the notion that a domestic abuser who has led a law-abiding life for many years may no longer pose the risk to family members that justified the initial ban. See *Skoien*, 614 F.3d at 644. We note that while the petitioner in this case does

not explicitly make these arguments, he does cite *Skoien* in support of his otherwise conclusory contention that a perpetual prohibition violates his rights under the second amendment.

¶ 38 The petitioner contends that a perpetual or lifelong ban on firearm ownership is unconstitutional. He does not specify whether he is arguing that the statutes at issue are unconstitutional on their face or unconstitutional as applied to him. Courts that have considered similar arguments have treated them as challenges to the statutes as applied. See, *e.g.*, *id.* at 645; *Enos*, 855 F. Supp. 2d at 1099; see also *Coram*, 2013 IL 113867, ¶ 18 (stating that the circuit court in that case found the FOID Act prohibition to be unconstitutional as applied to Coram). The petitioner in this case is not in a position to make such a claim.

¶ 39 As discussed previously, the petitioner pled guilty late in 2011 to a charge based on events that took place earlier that year. He petitioned for review less than two years later, in March 2013. Thus, he is not someone "who has been law abiding *for an extended period*" of time after his conviction (emphasis added) (*Skoien*, 614 F.3d at 645). Nor has he alleged any other facts "that distinguish his circumstances from those of persons historically barred from Second Amendment protections" due to domestic violence convictions (*Enos*, 855 F. Supp. 2d at 1099 (explaining that such allegations are necessary to sustain an as-applied constitutional challenge (citing *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011)))). As such, he has not provided us with any basis to find that an otherwise constitutional statutory scheme is not constitutional as applied to him. See *Skoien*, 614 F.3d at 645 (explaining that an individual "to whom a statute properly applies can't obtain relief based on arguments that a differently situated person might present"). Thus, even if the petitioner had not forfeited his constitutional claim, we would reject it.

¶ 40 For the foregoing reasons, we deny the petitioner's motions to correct misnomer and dismiss the appeal, and we reverse the order of the circuit court.

¶ 41 Motions denied; order reversed.