NOTICE
Decision filed 08/11/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220418-U

NO. 5-22-0418

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| KOREY WEDEMEYER and KRISTIN WEDEMEYER, | ) ) ) | Appeal from the Circuit Court of Randolph County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 20-L-16 |
| ESTATE OF COLLEEN S. BENNETT and BEN BENNETT, | ) ) ) ) | Honorable Richard A. Brown, |
| Defendants-Appellees. | ) ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appeal is dismissed where no valid defendant exists, relief pursuant to section 2-401(b) involving misnomer is unavailable, and the time to allow plaintiffs to amend their complaint to add a viable defendant pursuant to section 2-616(d) has expired.

¶ 2    Plaintiffs, Korey Wedemeyer and Kristin Wedemeyer, appeal the circuit court's order finding they entered into a binding settlement agreement and said agreement was enforceable. On appeal, they argue that the circuit court's finding of a binding and enforceable settlement agreement was against the manifest weight of the evidence. For the following reasons, we vacate the circuit court's order and dismiss the appeal.

1

¶ 3                                    I. BACKGROUND

¶ 4     On June 24, 2019, plaintiff Korey Wedemeyer was involved in a vehicle accident with Colleen Bennett. Colleen died at the scene as a result of injuries sustained in the crash. On July 29, 2019, plaintiffs' counsel sent correspondence to GEICO, the insurer of the vehicle Colleen was driving. Counsel's correspondence advised GEICO of its representation of Korey and extended a settlement offer. The final portion of the correspondence was entitled "**Time Limited Offer of Settlement**" and stated, *inter alia*, the following:

> "In light of these facts, Korey is extending a onetime policy limits demand (which is subject to proof) to settle his bodily injury claims for the single person policy limits of any and all insurance policies which provided coverage or may have provided coverage for Collen [*sic*] Benet's [*sic*] alleged negligence in said motor vehicle crash. In return, Korey will execute a release of liability for your insured and/or your insured's estate, if the conditions set forth herein are satisfied.
>
> This [is a] very generous proposal of settlement of Korey's claim and is contingent upon tendering/payment of the demanded amounts on or before the close of business on Friday, August 30, 2019. Please made the check payable to Korey Wedemeyer and his attorneys The Cagle Law Firm. My office will hold said settlement and not deposit them until the release is executed by Korey and returned to your office. Moreover, please be advised that under tender of the applicable policy limits my law firm agrees to indemnify, defend[,] and hold the parties related harmless against all liens and claims for liens asserted against the settlement funds pursuant to 735 ILCS 5/2-2301."

2

¶ 5     On July 30, 2019, GEICO sent correspondence to The Cagle Law Firm by facsimile that stated:

> "This letter is to acknowledge your correspondence dated July 29, 2019, in which you confirm your representation of Korey Wedemeyer for injuries sustained in the automobile accident of June 24, 2019. We also acknowledge your demand of our policy limits to settle the Bodily Injury claim of Korey Wedemeyer.
>
> I have reviewed the information included in your demand, and as GEICO Casualty Company will agree to meet your demand and agree to tender its $25,000.00 policy limits to settle the Bodily Injury claim of Korey Wedemeyer. As such, I will fax the release to your offices under a separate cover. I have also tendered payment in the amount of $25,000.00 as instructed in your July 29, 2019, letter."

¶ 6     GEICO also sent a second facsimile comprised of correspondence and a release on July 30, 2019. The correspondence stated the check would be mailed under separate cover and advised counsel to contact Ms. Maloy if there were any questions. The release discharged Ben W. Bennett, the Estate of Colleen S. Bennett and GEICO Casualty Company. A check in the amount of $25,000 was mailed to plaintiffs' counsel.

¶ 7     After receiving no response, GEICO sent correspondence to plaintiffs' counsel on December 2, 2019, December 10, 2019, and January 7, 2020, following up on the proposed settlement. On January 28, 2020, plaintiffs' counsel sent correspondence to GEICO stating it failed to meet a condition precedent in that GEICO failed to send documentation proving the policy limit was $25,000. Plaintiffs' correspondence withdrew the prior offer and offered to settle the case for

3

$800,000. Additional correspondence was exchanged, and the parties continued to dispute whether a settlement was reached.

¶ 8    On July 10, 2020, plaintiffs filed suit against defendants the "Estate of Colleen S. Bennett; & Ben W. Bennett" The complaint alleged, *inter alia*, that Ben Bennett was appointed independent administrator of the Estate of Colleen S. Bennett on July 10, 2020. The complaint alleged three counts: (1) negligence against Colleen's estate, (2) negligent entrustment against Ben as the decedent's husband and joint owner of the pickup truck Colleen was driving in the accident, and (3) loss of consortium against both defendants. A summons was issued to "defendant Ben W. Bennett" on June 30, 2020. The summons was served on August 15, 2020. On August 21, 2020, plaintiffs filed a motion for leave to file a first amended complaint to include punitive damages.

¶ 9    On October 6, 2020, counsel for defendants entered an appearance on behalf of the "Estate of Colleen Bennett and Ben Bennett" and demanded a jury trial. Counsel also moved for leave to submit the answers and affirmative defenses out of time due to the plaintiffs' complaint being served at the wrong address for Ben. On October 9, 2020, the trial court granted the motion. Counsel filed answers on behalf of Ben and the Estate of Colleen Bennett, denying the majority of the allegations. Counsel also filed affirmative defenses on behalf of Colleen's estate that alleged, *inter alia*, plaintiffs' claims were barred by the doctrine of (1) settlement, (2) estoppel, and (3) waiver because plaintiff Korey Wedemeyer and defendant entered into an enforceable settlement agreement based on plaintiff's July 29, 2019, offer and GEICO's July 30, 2019, acceptance. On October 23, 2020, plaintiffs filed an answer to the affirmative defense admitting their counsel sent correspondence to GEICO on July 29, 2019, with a settlement offer and GEICO sent a responsive letter on July 30, 2019. They denied that any settlement was reached.

4

¶ 10  On December 14, 2020, the trial court granted plaintiffs' motion for leave to file an amended complaint. The amended complaint was filed on December 21, 2020, and alleged four counts: negligence against Colleen's estate, willful and wanton conduct against Colleen's estate, negligent entrustment against Ben, and loss of consortium against both defendants. Counsel for defendants filed answers and again raised the affirmative defense related to the alleged July 2019 settlement agreement. On January 14, 2021, plaintiffs again admitted they sent the July 29, 2019, correspondence and GEICO sent correspondence dated July 30, 2019, but argued no settlement was reached because GEICO failed to meet conditions precedent related to the offer.

¶ 11  On July 27, 2021, plaintiffs moved to voluntarily dismiss defendant, Ben W. Bennett, without prejudice. Plaintiffs also filed a motion to strike and for summary judgment or summary determination of defendants' affirmative defense related to the settlement. A memorandum of law was provided in support of the motion. Both pleadings were further supported by the affidavit of plaintiffs' counsel, Zane T. Cagle, stating his office never received proof of the policy limits.

¶ 12  On August 3, 2021, the trial court granted plaintiffs' motion to voluntarily dismiss and issued an "agreed dismissal order" voluntarily dismissing "Defendant Ben W. Bennett ONLY without prejudice with the right to re-file within one (1) year pursuant to 735 ILCS 5/2-1009." The order stated the case would "continue against Defendant Estate of Colleen S. Bennett."

¶ 13  On August 30, 2021, defendant filed its response to plaintiffs' motion related to its affirmative defense and filed a cross-motion for summary judgment with a memorandum in support. The response relied on GEICO's July 30, 2019, correspondence to plaintiffs' counsel accepting the settlement and stating that "$25,000.00 was indeed the 'policy limit[s] of Defendant's GEICO policy." Defendant argued that offer and acceptance were shown. Defendant's cross-motion for summary judgment was based on the same facts.

5

¶ 14    After additional responses and replies were filed, on December 1, 2021, the trial court issued an order finding that the parties disputed whether plaintiffs received GEICO's July 30, 2019, letter of acceptance, and if they did, whether the letter amounted to proof of the insurance policy limits. After finding these to be material issues, summary judgment was denied. The court issued an order setting the limited issue of whether a settlement agreement had been reached for a trial.

¶ 15    The bench trial was held on March 18, 2022. Testimony from Ms. Maloy and Rajeev Kumar was provided at the hearing. Ms. Maloy testified about her correspondence to plaintiffs' counsel accepting the settlement offer, as well as her communications with Mr. Kumar to determine whether the facsimiles were successfully sent. She further testified that her correspondence to plaintiffs' counsel confirmed the policy limit and no request for specific documentation was requested in the settlement demand. Mr. Kumar testified that he was the software development manager for GEICO. He identified and addressed documentation regarding whether a facsimile was successfully sent and confirmed Ms. Maloy's two facsimiles were sent at the same time and were successfully transmitted. Following clarification of the exhibits admitted, the parties submitted closing arguments. The court took the matter under advisement.

¶ 16    On March 24, 2022, the trial court issued an order finding that GEICO's July 30, 2019, correspondence stated that $25,000 was the policy limit. The court further found that no evidence was presented that defendant had any other liability policies and proof of policy limits could not be provided for policies that did not exist. The court found plaintiffs' demand for proof was nonspecific, and that GEICO's correspondence complied with the request. The court found the parties settlement agreement was "binding and shall be given full force and effect."

¶ 17    On April 12, 2022, plaintiffs filed posttrial motions requesting reconsideration of the court's finding of a settlement and further disputing the settlement was enforceable. On June 3, 2022, the trial court denied the motions. The order entered judgment in favor of defendant and directed GEICO to tender payment of $25,000 to "Korey Wedemeyer and his attorneys." Plaintiffs timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, plaintiffs argue that the trial court erred by finding a settlement was reached. They further argue that the trial court erred by enforcing the settlement contract. However, before we address the merits of the appeal, we must first address the validity of the defendant captioned as the "Estate of Colleen Bennett."[1] Reviewing courts have "an independent duty to ensure that the trial court and this court have jurisdiction over a case." *People v. Arriaga*, 2023 IL App (5th) 220076, ¶ 12. This duty is applicable in both civil and criminal cases. *People v. O'Connor*, 313 Ill. App. 3d 134, 135 (2000). We review jurisdictional issues *de novo*. *In re Marriage of Britton*, 2022 IL App (5th) 210065, ¶ 39.

¶ 20    It is well settled that "estates are not natural or artificial persons and lack capacity to sue or be sued." *Precision Components, Inc. v. Estate of Kuntz*, 112 Ill. App. 3d 309, 310 (1983); *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 32; *Estate of Godair v. Case*, 220 Ill. App. 348, 349 (1920). "A party to litigation must have a legal existence, either natural or artificial, to sue or be sued." *Jackson v. Village of Rosemont*, 180 Ill. App. 3d 932, 937 (1988). An action against a deceased person must be brought in the name of the executor or

---

[1]We requested supplemental briefing on this issue and both parties provided briefs addressing this issue.

administrator as the representative of the estate. *Wisemantle v. Hull Enterprises, Inc.*, 103 Ill. App. 3d 878, 881 (1981). It is the person in this capacity that must be served with summons. *Id.*

¶ 21    Here, it is undisputed that although plaintiffs' complaint alleged that Ben Bennett was the independent administrator of the Estate of Colleen Bennett, the suit was filed against the estate, not the administrator. Further, while summons for "Defendant, Ben Bennett" (who was also named as an individual defendant in this matter) was issued and served (at the wrong address), no summons was ever issued to Mr. Bennett as the independent administrator Colleen's estate.

¶ 22    In the supplemental briefing, defendant requested dismissal since no valid defendant remained after "defendant, Ben Bennett" was voluntarily dismissed given plaintiffs' failure to either name or serve the administrator of the estate in any of the filed complaints. Defendant argued that the estate's status is that of a nullity and, therefore, the case is void *ab initio*. Plaintiffs argued that misnomer applied pursuant to section 2-401(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-401(b) (West 2020)) and, if it did not, section 2-616(d) of the Code (*id.* § 2-616(d)) allowed for amendment of the pleading because the requirements for relation back were met for a case involving mistaken identity. Plaintiffs also filed a motion to change defendant's name pursuant to misnomer. Defendant objected arguing that misnomer was inapplicable for nonexistent parties.

¶ 23                                    A. Misnomer

¶ 24    "Misnomer of a party is not a ground for dismissal[,] but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2-401(b) (West 2020). We note, however, there is a substantial difference "between a misnomer—which occurs when a party files an action against the correct party under an incorrect name—and mistaken identity—which occurs where the petition names the wrong

8

party." *Odle v. Department of State Police*, 2015 IL App (5th) 140274, ¶ 8. The " 'misnomer statute applies only to correctly joined and served, but misnamed, parties.' " *Capital One Bank, N.A. v. Czekala*, 379 Ill. App. 3d 737, 743 (2008) (quoting *Barbour v. Fred Berglund & Sons, Inc.*, 208 Ill. App. 3d 644, 648 (1990)). " 'The pivotal determination is whether plaintiff actually serves the real party in interest with a copy of the complaint and summons, within the time limits allowed by law, so that actual notice of the complaint has been lodged against it and notice of the need to respond has been given to the party in interest, albeit incorrectly named.' " *Borg v. Chicago Zoological Society*, 256 Ill. App. 3d 931, 934 (1993) (quoting *Yedor v. Centre Properties, Inc.*, 173 Ill. App. 3d 132, 137-38 (1988)).

¶ 25    In *Tyler v. J.C. Penney Co.*, 145 Ill. App. 3d 967, 969 (1986), the plaintiff named the "Market Place" as a defendant. Market Place moved to dismiss the action with prejudice claiming it did not have legal status to be sued. The court noted that "the problem here is not that the plaintiffs misnamed a proper party, it is that they did not even name a proper party, and they may not claim the benefits of the misnomer rule." *Id.* at 974. Defendant's motion was granted, and the dismissal was upheld on appeal with the court stating a "complaint which does not name a party legally in existence is in reality a nullity as to that party." *Id*. at 972-73.

¶ 26    *Borg v. Chicago Zoological Society*, 256 Ill. App. 3d 931, 936-37 (1993), however, reached a contrary conclusion when addressing the named defendant, Chicago Zoological Park, Inc. a/k/a Brookfield Zoo, instead of the actual name of the defendant, Chicago Zoological Society. *Borg* found this was "not a case where the wrong party was sued" and noted defendant was commonly referred to as the Brookfield Zoo and that both the Chicago Zoological Park and Brookfield Zoo were listed in the Chicago telephone directory, whereas the Chicago Zoological Society was not. *Id*. at 936. Ultimately, the court found that all three names involved "the same entity." *Id*. The

9

court stated it was "not persuaded" by the case law presented by defendant "since in those cases of mistaken identity, plaintiff either sued a nonentity, or the real party in interest was not named and served." *Id.* at 937.

¶ 27    Here, the circumstances involve a suit against an estate which lacks the capacity to sue or be sued and is a legal nonentity. *Estate of Hudson v. Tibble*, 2018 IL App (1st) 162469, ¶ 26. In order to sue Colleen's estate, plaintiffs were statutorily required to bring the lawsuit against Colleen's "personal representative." 735 ILCS 5/13-209(b) (West 2020); see also *Relf v. Shatayeva*, 2013 IL 114925, ¶¶ 26-27. However, no lawsuit was brought against the personal representative of Colleen Bennett's estate. Further, despite alleging that Ben Bennett was the independent administrator of Colleen's estate, the plaintiffs failed to issue summons to Ben Bennett, in that capacity. It is undisputed that an estate is not a valid legal entity and, thus, lacks the legal capacity to sue or to be sued. *Casteneda v. Ingram*, 2018 IL App (1st) 170065, ¶ 13 (citing *Mareskas-Palcek*, 2017 IL App (1st) 162746, ¶ 32).

¶ 28    In addressing how misnomer should be applied to a legally nonexistent entity, we turn to *Vaughn v. Speaker*, 126 Ill. 2d 150 (1988). In *Vaughn*, the plaintiff initially filed suit against William Speaker for negligence stemming from a car accident that occurred 23 months earlier. *Id.* at 154. However, Mr. Speaker died 10 months before plaintiff filed suit. *Id.* After learning of his death, after the statute of limitations had run, plaintiffs then filed suit against the co-executors of the deceased's estate and summons was served on the co-executors. *Id.* at 155. The executors moved to dismiss, and the motion was granted. *Id.* The dismissal was affirmed on appeal when the court found the initial action was a nullity that could not be amended and, therefore, the second complaint could not relate back to the initial filing. *Id.*

10

¶ 29   The Illinois Supreme Court granted leave to appeal, examined sections 2-1008(b), 2-401, and 2-616 of the Code, and, after noting that these statutes required liberal interpretation, found that "[e]ven under a most liberal construction" none of those provisions was "of avail to plaintiffs." *Vaughn*, 126 Ill. 2d at 157-58.[2] With regard to section 2-401, addressing misnomer, the court found that changing the name of the decedent to that of decedent's executors was not "simply the correction of a misnomer." *Id*. at 158. "This is not a situation where, for example, a plaintiff merely misspelled a defendant's surname or sued an incorrect common name. Instead, plaintiffs here intentionally sued [the deceased] when they should have sued his estate." *Id*. at 158-59. The court noted that an individual and their estate could not exist contemporaneously, were wholly distinct legal entities, and therefore found that substitution of the estate "was not merely the correction of a misnomer" and section 2-401 could not "be invoked for relation back of the second complaint to the date of the original filing." *Id*. at 159.

¶ 30   We find substantial differences between *Vaughn* and the case at bar. Namely, *Vaughn* was dealing with two legal entities that did not exist contemporaneously. Here, while an estate and its administrator generally do exist contemporaneously, only one is a legal entity with capacity to be sued and can be classified as a real party in interest. A " 'real party in interest' has an actual and substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the case. See *Vukusich v. Comprehensive Accounting Corp*., 150 Ill. App. 3d 634, 640 (1986); see also Black's Law Dictionary 1264 (6th ed. 1990)." *Lyons v. Ryan*, 201 Ill. 2d 529, 534-35 (2002). "If the named

_____

[2]Section 2-1008(b) was not raised by plaintiffs; however, it is equally unavailing here because Colleen Bennett passed away long before plaintiffs filed suit. See 735 ILCS 5/2-1008(b) (West 2020).

11

party in fact exists, but is not a real party in interest, a court can conclude that the plaintiff has mistakenly sued the wrong party." *Zito v. Gonzalez*, 291 Ill. App. 3d 389, 393 (1997).

¶ 31 "There are good and obvious reasons for barring litigation by and against persons or entities who are fictional and do not actually exist." *Santiago v. E.W. Bliss Co.*, 2012 IL 111792, ¶ 40 (Karmeier, J., specially concurring); see also *id*. ¶ 55 (distinguishing *Santiago* from the cases cited by defendants which "address[ed] situations where a defendant did not exist at all [citations], where a corporation whose existence is defined by law was involved [citation], or where a summons was served on a nonexistent trust account [citation]" (Burke, J., specially concurring)). Here, the sole remaining defendant has no legal existence (see *Mareskas-Palcek*, 2017 IL App (1st) 162746, ¶ 32) and therefore cannot be a real party in interest as a matter of law. See *Grieff v. Olsen's Automotive Supply*, 167 Ill. App. 3d 589, 591-92 (1988) ("Olsen's Automotive Supply is not a legal entity. *** ([T]he misnomer rule) does not apply to that category of cases in which the defendant does not have legal status."); see also *Borg*, 256 Ill. App. 3d at 937 (distinguishing its decision from those involving suits against nonentities or instances where the real party in interest was not named and served). Here, the remaining defendant is a nonentity, and the real party in interest was never actually served in his capacity as the administrator of the estate. Plaintiffs' error can only be classified, at best, as a mistaken identity. As such, we hold that misnomer is inapplicable and deny plaintiffs' motion to change defendant's name pursuant to section 2-401(b).

¶ 32                              B. Mistaken Identity

¶ 33 Plaintiffs also argue, in the alternative, that this is a case of mistaken identity. To address issues of mistaken identity, we consider section 2-616(d) of the Code (735 ILCS 5/2-616(d) (West 2020)). We also consider the analysis of this section found in *Vaughn* and *Morton v. Madison*

12

*County Nursing Home Auxiliary*, 198 Ill. 2d 183 (2001), although we note the statute has changed since those decisions were issued.

¶ 34    In *Vaughn*, the supreme court noted the "appellate court found this provision inapplicable because '[i]n order for section 2-616 to apply there must also be an action pending against a person not originally named a defendant.' " *Vaughn*, 126 Ill. 2d at 159-60 (quoting *Vaughn v. Speaker*, 156 Ill. App. 3d 962, 965 (1987)).[3] The Illinois Supreme Court stated, "Regardless of whether an action against a decedent is under all circumstances a nullity, section 2-616(d) provides no relief to plaintiffs because the fourth requirement of that provision was not met: there is no indication or assertion that either co-executor knew prior to the running of the statute of limitations that a complaint had been filed." *Id*. at 160. Similarly, in *Morton*, the court refused to apply section 2-616(d) to allow for relation back because the plaintiff's service on the county nursing home's agent was not service on the agent of Madison County and therefore the third requirement was not met. *Morton*, 198 Ill. 2d at 189.

¶ 35    We note that at least one appellate court found it "significant that [*Vaughn*] declined to base its holding *** on the proposition that a complaint filed against a dead person is a nullity for purposes of the relation back doctrine, even though that was the basis of the appellate court decision" and instead defaulted to review of the statute. *Marcus v. Art Nissen & Son, Inc*., 224 Ill. App. 3d 464, 470 (1991). Reliance on the statute when discussing relation back was also seen in a more recent Illinois Supreme Court decision. See *Santiago*, 2012 IL 111792, ¶¶ 27-28. In *Santiago* (*id.* ¶¶ 27-30), the court vacated the appellate court's dismissal based on a nullity and distinguished

---

[3]The appellate court found the initial action a nullity which could not give rise to a pending action. *Vaughn*, 126 Ill. 2d at 159-60.

its case from that seen in *Alton Evening Telegraph v. Doak*, 11 Ill. App. 3d 381 (1973), after finding the plaintiff was a real person with a fictitious name as opposed to a fictitious person.

¶ 36    The history of the relation back statute is also relevant. As noted in *Morton*, prior to 1954, the failure to join a proper party was fatal and no relation back was allowed. *Morton*, 198 Ill. 2d at 186-87. However, in 1954, the legislature enacted what is now known as the relation back statute for instances of mistaken identity seen in section 2-616(d). *Id.* at 187. At the time *Vaughn* and *Morton* were issued, the statute contained five requirements, and if all five were not met, relation back was denied. *Vaughn*, 126 Ill. 2d at 160; *Morton*, 198 Ill. 2d at 187-89. Here, while plaintiffs argue that they meet all five requirements, the argument is based on a statute no longer in existence.

¶ 37    The legislature amended section 2-616(d) in 2001. See Pub. Act 92-116, § 5 (eff. Jan. 1, 2002). The current section no longer contains five requirements; it contains three. See 735 ILCS 5/2-616(d) (West 2020). Two requirements remain substantially the same and require the original complaint to be timely filed and the original and amended pleading arise from the same transaction. *Id.* However, the other requirements, which included the bases used to deny relation back in *Vaughn* and *Morton*, were revised. The revision removed the required findings that: (a) the failure to join was inadvertent, (b) *actual* service was made on the person although in the wrong capacity, and (c) *actual* knowledge by the party who was not named in the litigation of the litigation within the time allowed for filing a claim in that litigation. These requirements were replaced by the current language that states:

> "[T]he person, within the time that the action might have been brought or the right asserted against him ***, received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the

14

of the proper party, the action would have been brought against him." *Id.* § 2-616(d)(2).

¶ 38    While the differences are subtle, such differences would potentially allow for the relation back doctrine to apply in this matter because Ben Bennett was actually served as an individual defendant with a copy of the complaint filed within the prescribed time limitations and therefore Ben Bennett, as administrator of Colleen Bennett's estate, would have received notice of the action, although he was not served in that capacity. However, the relation back doctrine cannot save the case at bar.

¶ 39    Section 2-616(a) limits amendments, which include "introducing any party who ought to have been joined as plaintiff or defendant" to "any time before final judgment." *Id.* § 2-616(a). "A 'final judgment' is a determination by the circuit court on the issues presented by the pleadings 'which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit.' " *People v. Shinaul*, 2017 IL 120162, ¶ 10 (quoting *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47). Courts have long held that following the issuance of final judgment, a plaintiff has no statutory right to amend a complaint except to amend the pleading to conform with the proofs, an amendment not applicable here. See *Asher Farm Ltd. Partnership v. Wolsfeld*, 2022 IL App (2d) 220072, ¶ 47 (citing 735 ILCS 5/2-616(c) (West 2020)); *FHP Tectonics Corp. v. American Home Assurance Co.*, 2016 IL App (1st) 130291, ¶ 36; *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 14; *Aarrow Ambulance v. Davis*, 16 Ill. App. 3d 318, 319-20 (1974); *Fox v. Department of Revenue*, 34 Ill. 2d 358, 360 (1966). Here, the trial court issued its final judgment on June 3, 2022, and the time allowing plaintiffs to amend their complaint to add a new defendant, namely "Ben Bennett, as the administrator of the Estate of Colleen Bennett," has long passed. Plaintiffs' failure to timely move to amend the complaint before the circuit court entered final judgment

15

precludes amendment. Therefore, we reject plaintiffs' argument that the relation back statute is applicable.

¶ 40                                   III. CONCLUSION

¶ 41    With no viable defendant, this case is a nullity. Accordingly, we vacate the trial court's judgment and dismiss the appeal.


¶ 42    Vacated; appeal dismissed.